353527                                                                                           579607

Florida                          **NOTE**                      FHA Case No.
                                                               093-5694731-703 203b

THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.

NOVEMBER 18, 2003          4153 PALAU DRIVE, SARASOTA, FL 34241
       (Date)                        (Property Address)

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means James B. Nutter & Company, a Missouri Corporation, and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

ONE HUNDRED FOUR THOUSAND NINE HUNDRED FORTY EIGHT & 00/100
Dollars (U.S. $ 104,948.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX
percent (  6.000    %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on JANUARY, 2004          . Any principal and interest remaining on the first day of DECEMBER, 2033   , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 4153 Broadway, Kansas City, Missouri 64111 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $     629.22     . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other (specify)

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                             percent (  4.00      %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
KENNETH R. SUTHERLAND          - Borrower

_____ (Seal)
                               - Borrower

_____ (Seal)
                               - Borrower

_____ (Seal)
                               - Borrower

_____ (Seal)
                               - Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
JAMES B. NUTTER & COMPANY
BY _____
TRACEY COWAN
ASST. SECRETARY

_____ (Seal)
                               - Borrower

_____ (Seal)
                               - Borrower

# EXHIBIT I

Notice Dated August 2, 2012 Mailed to Wrong Address

Exhibit "A"

# JAMES B. NUTTER & COMPANY  Mortgage Bankers

[816] 531-2345
[800] 875-7334

August 02, 2012

WESTPORT/PLAZA OFFICE
4153 BROADWAY
P.O. BOX 10346
KANSAS CITY, MISSOURI 64171-9936

C/O SHERRIE HAMPTON-MUHAMED
4163 PALAU DRIVE
SARASOTA FL 34241-5736

RE PROPERTY AT: 4163 PALAU DRIVE, SARASOTA FL  34241-5736

Our records reflect that a default now exists in the above referenced account. The default consists of the failure to make the scheduled payments as required by the Deed of Trust/Mortgage securing the Promissory Note underlying this home loan.

In order to cure this default, send a payment by Certified Funds to the offices of the undersigned, refinance the loan, agree to modify the loan, or agree to a repayment plan on or before the expiration of  Thirty (30) days from the date of this letter.

At present, the amount due is as follows:
(1) Accrued and unpaid principal interest,
    taxes & insurance or monthly payments
    for the last 3        months @ $982.00
    per month ...............................$2,946.00
(2) Late charges of  ............. ...........$   196.40
(3) Insufficient Funds Charges ..............$
(4) Credit of Unapplied Funds Account .......$
(5) Bankruptcy or Previous Atty Fees & Costs..$_____
Total Amount Due on or Before the 16th of this month $3,142.40
Total Amount Due after the 16th                      $3,181.68
After the 1st of SEPTEMBER, another installment must be included.

This letter serves as further notice that James B. Nutter & Co. intends to enforce the provisions of the Note and Deed of Trust (Mortgage).  Unless you pay the full amount of the default on this loan, refinance the loan, agree to modify the loan, or agree to a repayment plan on or before     SEPTEMBER 01, 201, this shall serve as further notice to you that immediately thereafter, and without further demand or notice to you, JAMES B NUTTER & CO. shall accelerate the entire amount due of both principal and interest, which shall become immediately due and payable, and invoke any remedies provided for in the Note and Deed of Trust (Mortgage), including but not limited to the foreclosure sale of the property.  If such action should occur, any additional attorney fees and costs necessary to protect our interest, as provided for in the Note and Deed of Trust (Mortgage), will be your responsibility should you choose to cure the default at a later date. James B. Nutter and Co. is reporting the default to an appropriate credit reporting agency.

Sincerely,
Default Counseling Department
1-800-315-7334
FDLTR/QDLS/COLDOC/
NMLS I.D.# 2067

www.jamesbnutter.com


EQUAL HOUSING LENDER

# EXHIBIT J

Copy of Police Report filed October 3, 2013

OCT. 21. 2013  2:36PM                                                    NO. 0229   P. 2

Search Response      Search completed; of 1 items indexed, 1 hits.

## Sarasota County Sheriff

### Incident / Offense

Entry ID: 20166
Activity ID: nfarris

Case Nbr: 13-67482       Date / Time Reported: 10-03-2013 14:51:40 Thu
Clearance: G    Exception Type: [ ]  Felony: [ ]   Juvenile: [ ]  DNA Swab: [ ]    Ofcr-Initiated Report? [ ]

Offense: 22C    CIVIL DISTURBANCE
Statute:                UCR:              Offense Indicator: 1
Attempt: [ ]            Drug Related: [ ] Pharmaceutical Related: [ ]
Occurred From:                    To:

Location: 4163 [ ] PALAU                                        DR [ ]
City:                St: FL  Zip: 34241

Dispatch Code:  22C            Dispatched: 10-03-2013 14:51:40 Thu
Arrived: 10-03-2013 14:51:41 Thu   Completed: 10-03-2013 15:01:04 Thu

Dispatch Location:
Division: PAT           Shift: [ ]
Reporting Officer ID#: 0198      GLASER,DOUGLAS MI          Unit ID: NDK1

Microfilm Loc:

Grid: 149        Zone: 011       Related Case Nbr:
Nature of Inc:   CIVIL DISTURBANCE
Dispatch Dspn:   N              Incident Disposition:

Loc Type:        Forced Entry:       Type Weapon:
Nbr Premises:    Nbr Offenders:      Nbr Offenses:
Nbr ArrTotal:    Nbr Arr Adult:      Nbr Arr Juv:
Occupancy Code:

Comments: Field Event/ MARY HAMPTON-MOUHAMMOD 4329 DONERAIL DR SNELLVILLE,GA #404-786-6291,LOCKS/ CHANGED ON RENTAL HOME IN MARCH/2013,HOME IN FORECLOUSURE/ *** >>>> by: DOUGLAS MI GLASER on terminal: $$NDK1/ UNKNOWN WHO CHANGED THE LOCKS AS COMP HAS CHECKED THE BANK WHO CLAIMS THEY DID/ NOT;COMP WISHED TO HAVE THE INCIDENT DOCUMENTED PRIOR TO HER CHANGING THE LOCKS/ BACK Correction on comps name:Sherrie Hampton Muhamed, advised home is theirs and not a rental.

# EXHIBIT K

## Copy of Second QWR dated April 30, 2013

April 30, 2013

To:    Mr. Keith Ward, CFO
James B. Nutter & Company
4153 Broadway
Kansas City, MO 64111

RE:    Homeowner:    Sherrie Hampton-Muhamed
Property Address:    4163 Palau Dr., Sarasota, FL 34241
Loan Number:    579607

Dear Mr. Pitzner,

Thank you for your response to my Qualified Written Request dated October 1, 2012, mailed October 10, 2012, received by you October 15, 2012, copy of my original request attached.

This is a "qualified written request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA). I understand that under Section 6 of RESPA you are required to acknowledge my request within 5 business days and must try to resolve the issue within 30 business days.

I hereby respectfully submit the following in dispute of the answer to my initial QWR as being insufficient and condescending and also stipulating that your response was provided on October 25, 2012, but was not answered. You did not validate the debt. I will be more detailed in my request below.

You claim the right or authority to "service" said loan, which was originated on or around November 18, 2003. I am very interested in and hereby demand an accurate and complete accounting of the list of numbers you provided on a disbursement and loan history sheet. Any questions or requests stipulated within the body of this QWR are specific to the accounting, ownership, transfer, or rights of any servicer to accept any payments under the provisions of the original note and mortgage.

Since the information was not complete, this is a SECOND Qualified Written Request (QWR) as defined by Section 6 of the Real Estate Settlement Procedures Act (RESPA) for information regarding the mortgage loan as referenced above. In addition this is also a request made pursuant to Section 404(b) of Public Law 111-22 for the name, address and telephone number of the owner of the Mortgage/Note and for the same information with respect to the Master Servicer of the obligation, as well as Public Law 107-56, 115 Stat. 271 P.A.T.R.I.O.T Act). Specifically, I am requesting the following information that I did NOT receive with the first request as you are already in violation of all of the above federal laws.

1. You sent a loan collection history and disbursement history with no clear explanation of what has actually happened, or to whom the payments were made, or explanation for codes or additional amounts/numbers. Specifically the last payment made in July 2012 for $1981.00 has not been clearly documented, nor the insurance reimbursement made in July 2012, or explanation of other foreclosure fees and attorney fees that you claim are owed at this time (October, 2012). Based on the loan payments and disbursement history, please send evidence of all payments, written or otherwise for payments for principle, interest, taxes, insurances, fees and expenses and to **whom** these payments were made, as well as the transaction code list for each system and the definition

for each corresponding transaction code for the histories you sent with the first QWR.  Second request for this information

2. Explain the fees on the last QWR that include title expenses and send a copy of that title report. Second Request for this information.

3. Please give a breakdown of foreclosure fees on the October QWR and why they are being charged when this loan has not been validated.

4. Pursuant to the Truth-In-Lending Act, identify the name, address and telephone number of the OWNER of the note, who can establish beyond any doubt the legal right, via compliance with all applicable statutory state and federal laws. You have included a copy of the Note and the Mortgage instrument on the above referenced account, but I need to know who OWNs the Note, along with the address and phone number. Second request.

5. Please send the check #, wire transfer and wire transfer instructions or any other method that may have been used to fund this loan. Your employees have stated that this loan was funded through the title company, so please provide all details of the transactions through the title company as well, in order to provide positive proof for funding of this loan. Second request

6. Pursuant to the P.A.T.R.I.O.T. Act, provide all of the accounting, the flow of all monies and source of all funds related to the above referenced account. Please identify the custodian of the records that would show all entries regarding the flow of funds for the subject loan transaction prior to and after closing of the loan. (Flow of funds, means any record of money received, any record of money paid out and any bookkeeping or accounting entry, all receivable accounts, general ledger and treatment of the subject loan transaction at your company or any affiliate including, but not limited to whether the subject loan transaction was ever entered into any category on the balance sheet at any time or times; whether any reserve for default was ever entered on the balance sheet, and whether any entry, report or calculation was made regarding the effect of this loan transaction on the capital reserve. Or whether this was ever placed in a trust, pool or servicing agreement. Any pattern of securitization, transfer or assignment affecting this loan directly or indirectly. Who did you issue check or payment to for this loan, how much were you paid for this individual mortgage and what premium was paid?) Second Request for this information.

7. Provide copy of original loan application.

8. Provide all underwriting and title documents related to this loan.

9. Provide the Community on Uniform Security Identification Procedures (CUSIP) number or Pool number for the loan application. Second Request for this information

10. Provide all CUSIP numbers or Pool numbers on or assigned to or associated with the above referenced account. It has been verified that this loan went into a Ginnie Mae Trust and I demand proof of all documentation relevant to that Trust to include Sponsor, Depositor and Trustee, etc. Second Request for this information.

11. Provide copy of Pooling and Servicing Agreement, FHA servicing guidelines, or any other agreement you rely upon to service this loan and follow all of the federal guidelines imposed by those agreements. Prove that you carried out those guidelines and what was actually done.
12. I received some HUD and FHA documents, but do not know if it is complete. I have a record that there is mortgage insurance, but do not know who has supplied this insurance. If in the records already sent, please specify which document. Second request.
13. Provide **proof of payment at origination** and all transfers upon which you rely for the authority to collect the money on this alleged loan. (Where is the offer, acceptance and consideration for this loan). Second request for this information.
14. This loan was paid off in full. Please provide the date, amount, name and details of insurance/bond company that paid off this loan. If paid off by another entity, please provide details and documents and explain when the mortgage was released.
15. I am asking that you CEASE and DESIST all collection activity until you can validate this loan and provide the information that proves who funded this loan and that Sherrie Hampton-Muhamed and James B Nutter & Co. have a contract that can be enforced. You will not report anything to my credit reports from the time I first requested you validate this debt through the time you actually validate the debt.
16. Please notify any of your agents to release my home back to me. I have not abandoned my property, as you have noted, and am paying a property manager to oversee the property. I have contacted the agent who put abandoned signs on the property, but the bank says they know nothing about changing the locks. So if your attorney or another agent has locked us out of our property, I would appreciate you doing something about this immediately and I can now send all of the bills to maintain the property and fees to the property manager, etc. to you.
17. Since we cannot take care of the property while you have us locked out of our house, I will be glad to send a partial invoice for $54,666.06, which is a portion of the money that we have invested in the property for repairs and maintenance.

This loan was never validated by you or your attorney and I am sure you are well aware that you have multiple violations with RESPA, which will accumulate as you continue to attempt to collect this debt.. You have two ways to contact me below if you would like to discuss this.
Please provide an immediate response since, you have not complied with RESPA in validating this debt and it has been more than six (6) months. Thank you in advance.

Respectfully,

Sherrie Hampton-Muhamed                              Sent by Certified Mail # 7008-0150-0002-6978-3527


Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA  30039
cmrsinc@comcast.net

# EXHIBIT L

**Second Dispute and Validation request, dated April 30, 2013 to Ronald R. Wolfe & Assocs. with letter and copy to James B Nutter & Co.**