ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 7 2014

JAMES N. ~~~~~, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Sherrie Hampton-Muhamed, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:13-CV-3659-CC |
| | ) |
| James B Nutter & Company, et al | ) |
| Ronald R. Wolfe & Assocs., P.L. ,et al | ) |
| JOHN DOES 1-20, | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, LACK OF PERSONAL JUSRISDICTION OR ALTERNATIVELY TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA

Plaintiff asks the court to deny defendant's motion to dismiss for failure to state a claim, lack of personal jurisdiction or alternatively to transfer venue to the middle district of Florida.

## I. INTRODUCTION

1.     Plaintiff is Sherrie Hampton-Muhamed, a resident of Gwinnet County

Georgia and is a consumer under all definitions, including 15 U.S.C.§1692 a(3)

and O.C.G.A. §10-1-392(6) and as executor under 15 U.S.C.§1692c(d).  The

consumer debt that defendants are attempting to collect is to pay money arising out

of a transaction in which the money, property or services are primarily for personal, family, or household purposes as defined under 15 USC §1692 a(5).

2.      Defendant is James B Nutter & Co, et al., which includes Defendants, Nutter, Piltzer, Huey and Ward who have been sued in their professional and individual capacities as employees of a corporation that is registered in the state of Missouri as a foreign corporation, that is also registered to do business in Georgia. Defendants are admitted debt collectors under 15 USC §1692a(6)and 15 USC §1692f(6) and at no time have disputed the fact that they are continuing to collect a debt after receiving it in default. Nutter uses instrumentality of interstate commerce or the mails in their business, the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another along with the enforcement of security interests.  Defendants either communicated information, should have communicated information, or were responsible for the actions of others in the corporation along with the attorneys they hired to represent them.

3.      Plaintiff has sued the defendants for violations of 15 USC §1692 *et seq* and RESPA, 12 U.S.C. §2601 and has not denied any of plaintiffs allegations in the amended complaint other then RESPA, claiming plaintiff was not the borrower on the alleged debt and did not have standing to sue.

4.      Plaintiff files this response asking the court to deny defendant's motion to
dismiss.

## II. STANDARD OF REVIEW

5.      The FDCPA establishes general standards of proscribed conduct, defines

and restricts abusive collection acts, and provides specific rights for consumers.

General standards of proscribed conduct protect a consumer from invasion of

privacy, harassment, abuse, false or deceptive representations, and unfair or

unconscionable collection methods. The FDCPA enables an individual consumer

to act as a "private attorney general", righting wrongs that the state and federal

government do not have the time, inclination or money to address. Graziano v.

Harrison, 950 F.2d 107 (3d Cir. 1991).

6.      The FDCPA (15 U.S.C. § 1692 et seq.) is an extraordinarily broad statute.

Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992); Clomon v. Jackson, 988

F.2d 1314, 1320 (2d Cir. 1993). The Act is to be enforced as Congress has written

it, Frey v. Gangwish, supra, 970 F.2d at 1521, and it is the plain language of the

Act that must be given effect. Heintz v. Jenkins, 514 U.S. 291, 297, 115 S.Ct.

1489, 1492, 131 L.Ed.2d 395 (1995). The Act is to be liberally construed in favor

of the consumer in order to effectuate its purposes. Cirkot v. Diversified Financial

Systems, Inc., 839 F.Supp. 941, 944 (D.Conn. 1993); Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002).

7.     The FDCPA imposes strict liability, so a consumer need not show intentional conduct by the debt collector in order to be entitled to damages. Russell v. Equifax A.R.S., supra, 74 F.3d at 33. See also Taylor v. Perrin Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997). A single violation is sufficient to establish civil liability under the FDCPA and to support judgment for the plaintiff.  Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993); Cacace v. Lucas, 775 F.Supp. 502, 505 (D.Conn. 1990). See also Stojanovski v. Strobl & Manoogian, P.C., 783 F.Supp. 319, 323 (E.D.Mich. 1992); Riveria v. MAB Collections, 682 F.Supp 174, 178-9 (W.D.N.Y. 1988).

**7.**     A showing of actual harm is not a necessary precursor to an award of damages under the FDCPA.  Emanuel v. American Credit Exch., 870 F.2d 805, 809 (2d Cir.1989)

## 8.     The Alleged Debt Is Covered Under the FDCPA

9.     "Debt" is defined in the Act as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been

reduced to judgment." 15 U.S.C. § 1692a(5). The alleged debt that the James B Nutter & Co. attempted to collect arose out of a transaction which was primarily for personal, family or household purposes.. Therefore, the debt that the Defendant attempted to collect on is covered under the FDCPA.

**James B Nutter & Co. is a "Debt Collector" under the FDCPA.**

10.     The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6) and under 1692f(6) Although the original FDCPA exempted attorneys from its reach, the Act was amended in 1986, and there is no longer any question that attorneys are debt collectors under the Act. Heintz v. Jenkins, supra, 514 U.S. 291 (1995). In repealing the exemption for attorneys, Congress intended to treat attorney and non-attorney debt collectors similarly because the prior legislation could be construed to imply that attorneys could use tactics that collection agencies were prohibited from using. Dutton v. Wolpoff and Abramson, 5 F.3d 649, 655 (3d Cir. 1993).

**The original Plaintiff's counsel Ronald R. Wolfe & Assocs. by their own admission are debt collectors.**

11.    Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice. A debt collection letter on an attorney's letterhead conveys authority and credibility.

12.    The Federal Trade Commission ("FTC") has issued an Official Staff Commentary in which it stated that § 1692i "applies to lawsuits brought by a debt collector, including an attorney debt collector, when the debt collector is acting on his own behalf or on behalf of his client." See Fair Debt Collection Practices Act Commentary at 53 Fed.Reg. 50097-50110 (December 13, 1988).

13.    In this matter, the James B Nutter & Co. has made several admissions that it's a debt collector as defined by the FDCPA.

14.    Damages for emotional distress are recoverable under the FDCPA. See Wenrich v. Robert E. Cole, P.C., CIV. A. 00-2588, 2001 WL 4994, at *6 (E.D. Pa. Dec. 22, 2000); Crossley v. Lieberman, 90 B.R. 682, 692 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989) ("[W]e believe that violations of the FDCPA, by their very nature, (e.g., abusive, deceptive or unfair debt collection practices), are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance.").

15.    Moreover, a plaintiff need not prove the elements of the torts of intentional

or negligent infliction of emotional distress to recover damages for emotional

distress under the FDCPA; instead, "when a violation of the FDCPA has been

established, actual damages for emotional distress can be proved independently of

state law requirements." Smith v. Law Offices of Mitchell N Kay, 124 B.R. 182,

188 (D. Del. 1991) (emphasis added).

16.    Finally, there are no particularized pleading requirements when it comes to

requesting actual damages under the FDCPA. See Yelin v. Swartz, 790 F. Supp. 2d

331, 336-37 (E.D. Pa. 2011) ("[T]he Complaint itself states that Plaintiff was

physically, mentally, emotionally and financially damaged by Defendants' conduct

and requests 'actual damages' as a form of relief .... Plaintiff has satisfied his

burden of pleading damages [under the FDCPA] ... ").

## III. ARGUMENT & AUTHORITIES

### LEGAL STANDARD UNDER 12 B6

17.    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," in order to

"give the defendant fair notice of what the ... claim is and the grounds upon which

it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley*

*v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations." *Id.* At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* At 570.

18. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009).

19. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

20. When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the plaintiff." *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Sir. 1996): *Jones v. General Elec. Co.,* 87 F.3d 209, 211

21. (7th Cir. 1996). "Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion." *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to

some relief, the court should overrule defendant's motion to dismiss.

## OBJECTION TO FDCPA CLAIM CANNOT BE PREMISED ON A MORTGAGE FORECLOSURE

22.     In this case, plaintiff who is a consumer as defined by 15 USC 1692 a (3) and 15 USC 1692 c(d) has alleged a claim for failing to stop debt collection activity after receiving a debt validation letter in violation of 15 USC 1692gb. James B Nutter & Co. is an admitted debt collector within the meaning of 15 USC 1692 a(6) and 15 USC 1692 f(6) and has not denied that they received the debt after it was in default and is collecting the debt for another party.

23.     Plaintiff has shown in her complaint how defendant has violated numerous counts of 15 USC 1692 and defendant has proven with their own admissions that they are debt collectors as defined by 1692a(6) and 15 USC 1692 f(6).  There is no longer an in rem foreclosure action in Florida so plaintiff is confused as to what defendant is referring.  Their complaint is only asking for different amounts of money to settle a default which has not been proven and asking for deficiency judgments which also are asking for money.

24.     The action in Florida court is nothing but debt collection no matter what the amount of money requested and is being demanded on a contract that plaintiff never signed.  As stated in the motion to dismiss "FDCPA is intended to curtail any objectionable act occurring in the process of collecting funds from a debtor" [

or alleged debtor] which is exactly what defendant is doing, attempting to collect funds from the alleged debtor. Why would they continue to come after the wrong person for two years? If a mortgage foreclosure decree is not a personal decree why are they suing plaintiff personally, and if it is not a money judgment, why are they asking for a money judgment? This debt collector has no rights to the note or mortgage and should never have been the one collecting the alleged debt to start.

25.   Defendant alleges in their motion that foreclosing a mortgage is not debt activity; however, plaintiff has only made claims of their misconducts in collecting a debt and has mentioned nothing about the foreclosure. Defendant's initial complaint might have started out as an "in rem" action with the collection of debt, but the amended complaint removed the "in rem" and only asked for money. Plaintiff's claims only have to do with the violations defendants made in their attempts to collect a debt, nothing about any debt or foreclosure activity. Since the CFPB will state otherwise as far as foreclosure and debt collection I will use their Amicus Brief to support my claims.

26.   Congress has granted the Consumer Financial Protection Bureau (the Bureau) the authority to enforce, and to promulgate rules regarding, the FDCPA. *See* Dodd-Frank Wall Street Reform and ConsumerProtection Act (Dodd-Frank Act), Pub. L. No. 111-203, §§ 1002(12)(H), 1022(b)(1), 1061(b)(5), 1089 (2010)

(codified at 12 U.S.C. §§ 5481(12)(H), 5512(b)(1), 5581(b)(5), 15 U.S.C. § 1692 *et seq.*). The Bureau is the first agency ever to have general rulemaking authority under the FDCPA.

27.     In so doing Plaintiff is taking quotes from the Amicus Brief filed by the CFPB in the 11th Circuit Court of Appeals Birster v. AHMSI 11-13574 G December 11, 2011, to rebut Defendants allegations that foreclosure is not debt collection:

"The Act defines "debt collector" as a person whose "principal purpose" is debt collection or "who regularly collects or attempts to collect" debts, 15 U.S.C. § 1692a(6). For the purposes of a single provision of the Act, § 1692f(6), the term "debt collector" "also includes" a person whose "principal purpose" is "the enforcement of security interests." *Id.*

Although the Act does not define "debt collection," attempting to obtain payment of a consumer debt unquestionably constitutes debt collection under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294(1995).

*Debt Collector:* The FDCPA generally defines "debt collector" as an entity whose "principal purpose" is debt collection or "who regularly collects or attempts to collect" debts. 15 U.S.C. § 1692a(6). Under an additional definition applicable for purposes of a single provision, § 1692f(6), the term "debt collector" "also

includes" any entity whose "principal purpose" is "the enforcement of security interests." *Id.* Six categories of people are specifically excluded from the definition of "debt collector." *Id.* § 1692a(6)(A)–(F). Enforcers of security interests do not appear on that list.

Courts that have concluded that enforcers of security interests qualify as "debt collectors" only for purposes of § 1692f(6) have failed to consider that enforcers of security interests may also "regularly collect" debts and thus qualify as "debt collectors" under the general definition. Notably, unlike other entities, enforcers of security interests are not explicitly excluded from the definition of debt collector. Nearly every court, including every federal appellate court, to have considered this question agrees. This conclusion is also consistent with a prior administrative interpretation of the Act, and furthers the Act's consumer-protection purpose.

***Debt Collection:*** Attempting to obtain payment of a consumer debt constitutes debt collection covered by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Nothing in the Act suggests that seeking payment from a debtor ceases to qualify as debt collection if it accompanies proceedings to enforce a security interest. That conclusion would create an enormous loophole, allowing debt collectors to abuse consumers with impunity whenever they happened also to seek to enforce a security interest. **Every federal appellate court to have published a decision on**

**this issue, and nearly every other court, agrees**."

28.    Plaintiff alleged that defendant was collecting a debt that they were not

entitled to collect and did nothing to stop collection activity once dispute of debt

was received. This action has nothing to do with a foreclosure of any kind and is

only related to the behavior and conduct of the defendants in their attempts to

collect a debt. Thus, plaintiff has alleged facts sufficient to show that the right to

relief is plausible and above mere speculation

29.    Because plaintiff's factual allegations support a claim upon which relief can

be granted, the court should deny defendant's motion and move defendants to

answer the complaint. In the alternative, if the court determines that plaintiff has

failed to state a claim, plaintiff asks the court to grant leave to amend the

complaint.

## **LACKS STANDING TO PURSUE A RESPA CLAIM**

30.    Defendant is alleging that due to the fact that plaintiff is not a borrower that

she has no rights to the information related to the note and mortgage. In February

2009, plaintiff took over as executor of her brothers estate and was bonded

becoming responsible for all debts and issues related to the property and the estate,

including filing Federal Income Taxes on his behalf. IRS contacted plaintiff

numerous times to complete the taxes, but plaintiff was unable to obtain the

information from the defendant. IRS was insistent for two years to complete everything but James B Nutter would not cooperate. As a matter of fact Nutter sent me nothing I requested until I sent a QWR in 2012. I did receive information then, but it wasn't what I asked for and not what IRS needed.

31. CFPB has clarified mortgage lending rules that assist surviving family members, since they already have title to the property. This rule not only gives family members access to the property and accounting records as if it were the borrower and arranges modifications, etc without qualifying in order to ease the transition after death. They no longer have to evaluate the heir's financial status before access to arrangements and transfers

32. Plaintiff spoke to Al Pitzner after sending the second QWR and requested what was not sent the first time. Initially he denied access then stated as executor she could have whatever she requested, but nothing was sent to plaintiff after that and without any explanation. As executor and heir to the estate, plaintiff has every right to resolve issues with her property and any erroneous debt collection. CFPB has provided regulations for servicers who are collecting for the loan owners or creditors and can no longer state that heirs have no right to the information. The no standing issue becomes moot because this no longer has anything to do with the plaintiff in this situation.

## LACK OF PERSONAL JURISDICTION

33.     FDCPA was designed by Congress to protect the consumer from illegal acts of the law. What sense would it make to protect the consumers if they had to run all over the country to sue the very people that are harassing them. Unlike any other lawsuit, FDCPA cases are designed, no matter where the defendants are(which are usually all over the country),  to ensure the consumer is allowed to bring action where they live and where the action took place; therefore not having to meet normal standards of meeting the restrictions of personal jurisdiction. These defendants waived service and were served the complaint timely, but plaintiff will still provide proof that personal jurisdiction over defendants is proper.

34.     Defendants are being sued in their personal and professional capacities as employees of James B Nutter & Co. who is a registered foreign corporation licensed in Georgia as a mortgage lender with NMLS and registered with the Secretary of State of Georgia since 1992 obtaining revenue, services and protection from this state. If employees of this corporation are violating the law in their practice, then this state would have significant reason to oversee their actions for the sake not only of the plaintiff, but of all others similarly situated.

35.     The activities of the defendants, as stated in the complaint, demonstrate a substantial, direct relationship between defendant's collection transactions within

the state and the claims asserted by plaintiff in this action. This is sufficient to authorize the court's exercise of long-arm jurisdiction under an FDCPA claim where defendant purposefully availed itself of the privilege of conducting activity within Georgia by (1) initiating contact with the plaintiff; (2) sending collection notices into the state; (3) sending emails related to its collection efforts into the state; (4)sending multiple mailings to Plaintiff's home in Georgia and (5) making multiple phone calls related to its collection effort into the state and (6) serving plaintiff in the state); see Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (same where defendant, a lawyer in Indiana, sent the plaintiff a single collection letter, with a copy to the plaintiff's employer, "causing consequences in New York in connection with efforts to collect the alleged debt."); Sisler v. Wal-Mart Stores, Inc., 2003 WL 23508105, at *1 (W.D.N.Y. Dec. 24, 2003) (finding personal jurisdiction appropriate where debt collection letters defendant sent into state gave rise to FDCPA claim; citing with approval Sluys); cf. Silva v. Jason Head, PLC, 2010 WL 4593704, at *3 (N.D.Cal. Nov. 4, 2010) (finding personal jurisdiction over nonresident attorney/debt collector appropriate under California law based on single voicemail giving rise to FDCPA claim); Maloon v. Schwartz, Zweban & Slingbaum, L.L.P., 399 F. Supp. 2d 1108, 1111-13 (D.Haw. 2005) (finding personal jurisdiction over nonresident debt collector appropriate under Hawaii law

based on single collection letter giving rise to FDCPA claim).

36.    A court in Georgia may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in the Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; [or] (2) Commits a tortious act or omission within this state. . Defendant meets both.

1)    as stated above defendants are employees of a corporation that is registered to do business in Georgia, so transacts any business within this state. If that were not the case, for purposes of FDCPA, the deliberate action of reaching across state lines to come after the plaintiff and attempt to collect the debt started the business relationship, in total violation of the law and intentions of the FDCPA.

2)    Defendants have committed a tortious act by intentionally inflicting emotional distress on the plaintiff. Defendant has acted intentionally and recklessly by continuing debt collection when they know they have no right to collect a debt from plaintiff and plaintiff has no contract with the defendant. Defendants have committed unfair, unconscionable and deceptive acts, not only in violation of 15 USC §1692f, but also in violation of unfair and deceptive practices toward the elderly and disabled, O.C.G.A §10-1-851.  The plaintiff is disabled and the

defendant's conduct of reckless, intentional, and outrageous debt collection has altered her physical, mental and emotional state creating the need for more medical attention. The stress created from the deceit and misleading statements/documents provided to the court alter the whole nature of the alleged debt collection, including erroneous presumptions from a consumer debt that does not even belong to plaintiff.

37. The importance of this decision is to eliminate the requirement for a defendant's actual physical presence within Georgia, and henceforth allows the assertion of long-arm jurisdiction over business conducted through postal, telephonic, and Internet contacts. Further, "a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (Footnote omitted.) Aero Toy Store, v. Grieves, 279 Ga. App. 515, 520(1), 631 S.E.2d 734 (2006).

38. Considered in this light, it is clear from the facts set out above that James B Nutter was doing business in this State sufficient to authorize the exercise of personal jurisdiction over it under O.C.G.A § 9-10-91(1).

39. Because this lawsuit arises out of defendant's contacts with the forum state in connection with his debt collection activities, the test for minimum contacts is

less stringent, and is satisfied by the contacts described above. Cf. Fava, 1997 WL

205336, (minimum contacts satisfied in FDCPA suit arising out of defendant's

debt collection activity within the state, including sending a debt collection notice

and mailings and emails pursuing the debt collection, and making multiple phone

calls) (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957 In

assessing the reasonableness of the exercise of jurisdiction in a particular case, the

court must consider:… the burden on the defendant, the interests of the forum

State, and the plaintiff's interest in obtaining relief.

40.     Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113–14 (1987)

(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

"On the other hand, where a defendant who purposefully has directed his activities

at forum residents seeks to defeat jurisdiction, he must present a compelling case

that the presence of some other considerations would render jurisdiction

unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

41.     In this case, plaintiff's prima facie evidence should convince the court that

defendant purposefully directed his debt collection activities at a resident of this

forum "such that he should reasonably anticipate being haled into court there …,"

World-Wide Volkswagen, 444 U.S. at 297, and defendant has identified no

compelling factor that makes the exercise of personal jurisdiction in this matter

unreasonable. As persuasively explained by the district court in Sluys: Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the [FDCPA], suits may be brought where the debtor ... receive[s] the communications.

42. Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned. Sluys, 831 F. Supp. at 324.

43. The first criteria for proving sufficient minimum contacts for FDCPA requires a defendant's contacts with the forum to give rise to plaintiff's cause of action, which is met the first time defendant mailed a notice or called the plaintiff in attempts to collect the alleged consumer debt.

44. The second criteria requires a defendant purposefully to avail itself of the privilege of conducting activities within the forum. With a license in Georgia as a mortgage lender, registered by the Secretary of State, to do business along with the intentional conduct to continue business with the plaintiff, Nutter purposefully availed itself of the privilege of conducting activities within the forum state of Georgia.

45. The third criteria for minimum contacts requires a defendant reasonably

anticipate being haled to court in the forum. This criteria is also met because Nutter's license to do business in Georgia has created a situation in which it should have reasonably anticipated being haled into court here. I would think that the state would want to be aware of businesses that they provide protection for that carry out violations of the law that would not only effect Plaintiff, but others similarly situated in the state of Georgia. If you violate the law anywhere, whether driving, soliciting, selling or collecting a debt, any normal person would be expected to be haled into court where the action took place, no matter how inconvenient it was.

46. The second part of the test for obtaining constitutional personal jurisdiction requires the exercise of personal jurisdiction not offend traditional notions of fair play and substantial justice. Since Nutter is registered as a foreign corporation In Missouri with a license to do business in Georgia, obtains revenue from Georgia,

47. Nutter can hire attorneys from any state and should reasonably anticipate the need for doing so. This burden would be no different than business in one of the other states. They hired attorneys in Florida to hale plaintiff into court there, and that definitely was not fair play and justice for the plaintiff. Since the physical address of the business is in Missouri, where allegedly all of the records are, how can the burden on the defendant be any more difficult in Georgia than it is in Florida, where they filed the actual suit on the plaintiff.

48.     Based on statements above, the court should deny defendant's motion to dismiss because defendant purposefully availed itself of the benefits and protections of the laws of the forum state. *See Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) Therefore, the court has specific jurisdiction over defendant.

*49.*     The court's assumption of jurisdiction over defendant will not offend traditional notions of fair play and substantial justice and will be consistent with the constitutional requirements of due process as defendant has derived financial benefit from doing business in the forum state and has enjoyed the protection of the forum state's laws. *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996); *Metro. Life, 84 F.3d at 568*

*50.*     The court should deny defendant's motion to dismiss because defendant engaged in continuous and systematic activity in the forum state. See *Metropolitan Life, 84 F.3d at 567-68.*

51.     Accordingly, the court should find that the pleadings, affirmations, and supporting materials on file constitute a sufficient averment of credible facts to establish that the exercise of personal jurisdiction over defendants in this FDCPA action is authorized and complies with the requirements of due process and

defendant's motion to dismiss plaintiff's amended complaint should be denied.

### OBJECTION TO MOTION TO TRANSFER VENUE

52. Under 28 U.S.C. § 1391(b) venue is proper in the district in which all the plaintiffs reside AND the district in which the claim arose.

53. "A threat to sue a consumer for a debt in a distant location where the consumer did not reside or engage in the transaction would be contrary to 15 U.S.C. § 1692i".

54. Also, the majority of FDCPA cases have held that the plaintiff's claim arises in the district in which the plaintiff received the offending communication or debt collection letter. See Bates v. C & S Adjusters, Inc.,980 F.2d 865 (2nd Cir.1992) (venue in FDCPA case was proper where debtor resided and where debt collector's demand for payment was forwarded); Paradise, 883 F.Supp. 521 (venue proper where plaintiff received debt collection letter); Russey, 837 F.Supp. at 1105 (consumer's receipt of collection notice was substantial part of events giving rise to claim under FDCPA); Lachman v. Bank of Louisiana in New Orleans, 510 F.Supp. 753, 760 (N.D.Ohio 1981) (venue in FDCPA case was proper where plaintiff received debt collection letter because that is where the injury occurred).

55. The court's reasoning in Sluys v. Hand, 831 F.Supp. 321, is persuasive: "Where an alleged debtor is located in a jurisdiction and receives documents from

a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the Act, suits may be brought where the debtor receive[s] the communications. Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned."Id. at 324; see also Russey, 837 F.Supp. at 1105 (exercise of its discretion to transfer venue "would frustrate the Congressional goal that the FDCPA be primarily enforced through the efforts of the aggrieved consumer") (citations and quotations omitted); Vlasak v. Rapid Collection Systems, Inc., 962 F.Supp. 1096, 1102-03 (N.D.Ill.1997) (same).

## CONCLUSION

Plaintiff has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FDCPA at this stage. See Ashcroft v. Iqbal, 129 S.Ct. at 1950. Plaintiff's claims should therefore survive dismissal.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss for Failure to State a Claim, maintain Jurisdiction and venue in this court. In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend

her Complaint.

DATED this 6th day of October, 2014

Sherrie Hampton-Muhamed

## VERIFICATION OF OBJECTION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT AND OR CHANGE OF VENUE AND FAILURE TO STATE A CLAIM

Under penalty of perjury, I declare that I am the alleged Plaintiff in the above-entitled matter, I have read the Motion and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated: October 6, 2014

Signed under 28 USC § 1746(1)
All Rights Reserved Without Prejudice
Without Recourse
Respectfully submitted,

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
(404)786-6291
cmrsinc@comcast.net

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing was prepared double spaced with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 6th day of October, 2014.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT** to be served in this matter by E-mail, Fax or U.S. Mail, addressed as follows     :

Filed this 6th day of  October, 2014.
Ann R. Schildhammer
Georgia Bar No. 600290
aschildhammer@taylorenglish.com
Matthew R. Rosenkoff
Georgia Bar No. 842117
Mrosenkoff@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Facsimile: (770) 434-7376
*Counsel for the Nutter Defendants*

And with the Clerk of Court through US Mail, Tracking #  *1Z  1V0 40E 01 83/1 0413*  US and not filed electronically as Plaintiff is excused from filing this document or thing electronically by Court order.

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
(404)786-6291
cmrsinc@comcast.net

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 7 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Sherrie Hampton-Muhamed, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:13-CV-3659-CC |
| | ) |
| James B Nutter & Company, et al | ) |
| Ronald R. Wolfe & Assocs., P.L. ,et al | ) |
| JOHN DOES 1-20, | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, LACK OF PERSONAL JUSRISDICTION OR ALTERNATIVELY TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA

Plaintiff asks the court to deny defendant's motion to dismiss for failure to state a

claim, lack of personal jurisdiction or alternatively to transfer venue to the middle

district of Florida.

## I. INTRODUCTION

1. Plaintiff is Sherrie Hampton-Muhamed, a resident of Gwinnet County Georgia

    and is a consumer under all definitions, including 15 U.S.C.§1692 a(3) and

O.C.G.A. §10-1-392(6) and as executor under 15 U.S.C.§1692c(d). The consumer debt that defendants are attempting to collect is to pay money arising out of a transaction in which the money, property or services are primarily for personal, family, or household purposes as defined under 15 USC §1692 a(5)

2. Defendant is Ronald R. Wolfe & Associates, P.L., et al., which includes Defendants, Wolfe, Croteau, Ivanov, Anthousis, Tilka, Marks, Wolf, Lewis, Schneider, Jones, Pidala, Hummel, Moravecky, Hannon, Ugaz, and Phillips who have been sued in their professional and individual capacities as employees of a corporation that is registered in the state of Florida. The law firm states that they were hired to represent James B Nutter & Co. who is a Missouri corporation that is also registered to do business in Georgia. Defendants are admitted debt collectors as under 15 USC §1692a(6)and 15 USC §1692f(6) and at no time have disputed the fact that they are continuing to collect a debt after receiving it in default. Wolfe uses instrumentality of interstate commerce or the mails in their business, the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another along with the enforcement of security interests. Defendants either communicated information, should have communicated information, or were responsible for the actions of others for the

2 of 28

corporation.

3. Plaintiff has sued the defendants for violations of 15 USC §1692 et seq and defendant have not denied any of plaintiffs allegations in the amended complaint.

4. Plaintiff files this response asking the court to deny defendant's motion to dismiss

## II. STANDARD OF REVIEW

5. The FDCPA establishes general standards of proscribed conduct, defines and restricts abusive collection acts, and provides specific rights for consumers. General standards of proscribed conduct protect a consumer from invasion of privacy, harassment, abuse, false or deceptive representations, and unfair or unconscionable collection methods. The FDCPA enables an individual consumer to act as a "private attorney general", righting wrongs that the state and federal government do not have the time, inclination or money to address. Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991).

6. The FDCPA (15 U.S.C. § 1692 et seq.) is an extraordinarily broad statute. Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992); Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993). The Act is to be enforced as Congress has written it, Frey v. Gangwish, supra, 970 F.2d at 1521, and it is the plain

language of the Act that must be given effect. Heintz v. Jenkins, 514 U.S. 291,

297, 115 S.Ct. 1489, 1492, 131 L.Ed.2d 395 (1995). The Act is to be liberally

construed in favor of the consumer in order to effectuate its purposes. Cirkot v.

Diversified Financial Systems, Inc., 839 F.Supp. 941, 944 (D.Conn. 1993);

Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002).

7. The FDCPA imposes strict liability, so a consumer need not show intentional

conduct by the debt collector in order to be entitled to damages. Russell v.

Equifax A.R.S., supra, 74 F.3d at 33. See also Taylor v. Perrin Landry,

deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997). A single violation is

sufficient to establish civil liability under the FDCPA and to support judgment

for the plaintiff. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d

Cir. 1993); Cacace v. Lucas, 775 F.Supp. 502, 505 (D.Conn. 1990). See also

Stojanovski v. Strobl & Manoogian, P.C., 783 F.Supp. 319, 323 (E.D.Mich.

1992); Riveria v. MAB Collections, 682 F.Supp 174, 178-9 (W.D.N.Y. 1988).

8. A showing of actual harm is not a necessary precursor to an award of damages

under the FDCPA. Emanuel v. American Credit Exch., 870 F.2d 805, 809 (2d

Cir.1989)

9. The Alleged Debt Is Covered Under the FDCPA

10."Debt" is defined in the Act as "any obligation or alleged obligation of a

consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The alleged debt that the James B Nutter & Co. attempted to collect arose out of a transaction which was primarily for personal, family or household purposes.. Therefore, the debt that the Defendant attempted to collect on is covered under the FDCPA.

11.James B Nutter & Co. is a "Debt Collector" under the FDCPA.

12.The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6) and under 1692f(6)  Although the original FDCPA exempted attorneys from its reach, the Act was amended in 1986, and there is no longer any question that attorneys are debt collectors under the Act.  Heintz v. Jenkins, supra, 514 U.S. 291 (1995).  In repealing the exemption for attorneys, Congress intended to treat attorney and non-attorney debt collectors similarly because the prior legislation could be construed to imply that attorneys

could use tactics that collection agencies were prohibited from using.  Dutton v. Wolpoff and Abramson, 5 F.3d 649, 655 (3d Cir. 1993).

13. The James B Nutter's alleged counsel Ronald R. Wolfe & Assocs. by their own admission are debt collectors.

14. Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice.  A debt collection letter on an attorney's letterhead conveys authority and credibility.

15. The Federal Trade Commission ("FTC") has issued an Official Staff Commentary in which it stated that § 1692i "applies to lawsuits brought by a debt collector, including an attorney debt collector, when the debt collector is acting on his own behalf or on behalf of his client."  See Fair Debt Collection Practices Act Commentary at 53 Fed.Reg.  50097-50110 (December 13, 1988).

16. In this matter, the James B Nutter & Co. has made several admissions that it's a debt collector as defined by the FDCPA.

17. Damages for emotional distress are recoverable under the FDCPA. See Wenrich v. Robert E. Cole, P.C., CIV. A. 00-2588, 2001 WL 4994, at *6 (E.D. Pa. Dec. 22, 2000); Crossley v. Lieberman, 90 B.R. 682, 692 (E.D. Pa. 1988), aff'd, 868

F.2d 566 (3d Cir. 1989) ("[W]e believe that violations of the FDCPA, by their

very nature, (e.g., abusive, deceptive or unfair debt collection practices), are

those kinds of actions which may be expected to cause emotional distress and,

therefore, the availability of damages for such distress is of paramount

importance.").

18. Moreover, a plaintiff need not prove the elements of the torts of intentional or

negligent infliction of emotional distress to recover damages for emotional

distress under the FDCPA; instead, "when a violation of the FDCPA has been

established, actual damages for emotional distress can be proved independently

of state law requirements." Smith v. Law Offices of Mitchell N Kay, 124 B.R.

182, 188 (D. Del. 1991) (emphasis added).

19. Finally, there are no particularized pleading requirements when it comes to

requesting actual damages under the FDCPA. See Yelin v. Swartz, 790 F. Supp.

2d 331, 336-37 (E.D. Pa. 2011) ("[T]he Complaint itself states that Plaintiff was

physically, mentally, emotionally and financially damaged by Defendants'

conduct and requests 'actual damages' as a form of relief .... Plaintiff has

satisfied his burden of pleading damages [under the FDCPA] ...

## III. ARGUMENTS AND AUTHORITIES

## OBJECTION TO LACK OF PERSONAL JURISDICTION
(Long arm Statute, Tortious Conduct, Minimum Contacts)

20. FDCPA was designed by Congress to protect the consumer from illegal acts of the law. What sense would it make to protect the consumers if they had to run all over the country to sue the very people that are harassing them. Unlike any other lawsuit, FDCPA cases are designed, no matter where the defendants are(which are usually all over the country), to ensure the consumer is allowed to bring action where they live and where the action took place; therefore not having to meet normal standards of meeting the restrictions of personal jurisdiction. These defendants waived service and were served the complaint timely, but plaintiff will still provide proof that personal jurisdiction over defendants is proper.

21. Defendants are being sued in their personal and professional capacities as employees of Ronald R. Wolfe & Assocs. and by representing James B Nutter & Co.,. who is a registered foreign corporation licensed in Georgia as a mortgage lender with NMLS and registered with the Secretary of State of Georgia obtaining revenue, services and protection from this state. Since the attorneys are allegedly representing this employer they should know where they are incorporated and if they are violating the law.

22. The activities of the defendants, as stated in the complaint, demonstrate a substantial, direct relationship between defendant's collection transactions

within the state and the claims asserted by plaintiff in this action. This is sufficient to authorize the court's exercise of long-arm jurisdiction under an FDCPA claim where defendant purposefully availed itself of the privilege of conducting activity within Georgia by (1) initiating contact with the plaintiff; (2) sending collection notices into the state; (3) sending emails related to its collection efforts into the state; (4)sending multiple mailings to Plaintiff's home in Georgia and (5) making multiple phone calls related to its collection effort into the state and (6) serving plaintiff in the state); see Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (same where defendant, a lawyer in Indiana, sent the plaintiff a single collection letter, with a copy to the plaintiff's employer, "causing consequences in New York in connection with efforts to collect the alleged debt."); Sisler v. Wal-Mart Stores, Inc., 2003 WL 23508105, at *1 (W.D.N.Y. Dec. 24, 2003) (finding personal jurisdiction appropriate where debt collection letters defendant sent into state gave rise to FDCPA claim; citing with approval Sluys); cf. Silva v. Jason Head, PLC, 2010 WL 4593704, at *3 (N.D.Cal. Nov. 4, 2010) (finding personal jurisdiction over nonresident attorney/debt collector appropriate under California law based on single voicemail giving rise to FDCPA claim); Maloon v. Schwartz, Zweban & Slingbaum, L.L.P., 399 F. Supp. 2d 1108, 1111-13 (D.Haw. 2005) (finding

personal jurisdiction over nonresident debt collector appropriate under Hawaii law based on single collection letter giving rise to FDCPA claim).

23. A court in Georgia may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in the Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; [or] (2) Commits a tortious act or omission within this state. . Defendant meets both.

24. As stated above defendants work for employees of a corporation that is registered to do business in Georgia, so transacts any business within this state. If that were not the case, for purposes of FDCPA, the deliberate action of reaching across state lines to come after the plaintiff and attempt to collect the debt started the business relationship, in total violation of the law and intentions of the FDCPA.

25. Defendants have committed a tortious act by intentionally inflicting emotional distress on the plaintiff. Defendant has acted intentionally and recklessly by continuing debt collection when they know they have no right to collect a debt from plaintiff and plaintiff has no contract with the defendant. Defendants have committed unfair, unconscionable and deceptive acts, not only in violation of

15 USC §1692f, but also in violation of unfair and deceptive practices toward
the elderly and disabled, O.C.G.A §10-1-851. The plaintiff is disabled and the
defendant's conduct of reckless, intentional, and outrageous debt collection has
altered her physical, mental and emotional state creating the need for more
medical attention. The stress created from the deceit and misleading
statements/documents provided to the court alter the whole nature ofthe alleged
debt collection, including erroneous presumptions from a consumer debt that
does not even belong to plaintiff.

26. The importance of this decision is to eliminate the requirement for a
    defendant's actual physical presence within Georgia, and henceforth allows the
    assertion of long-arm jurisdiction over business conducted through postal,
    telephonic, and Internet contacts.   Further, "a single event may be a sufficient
    basis for the exercise of long arm jurisdiction if its effects within the forum are
    substantial enough even though the nonresident has never been physically
    present in the state." (Footnote omitted.)   Aero Toy Store, v. Grieves, 279 Ga.
    App. 515, 520(1), 631 S.E.2d 734 (2006).

27. Considered in this light, it is clear from the facts set out above that James B
    Nutter was doing business in this State sufficient to authorize the exercise of

personal jurisdiction over it under O.C.G.A § 9-10-91(1) and likewise their appointed counsel.

28. Because this lawsuit arises out of defendant's contacts with the forum state in connection with his debt collection activities, the test for minimum contacts is less stringent, and is satisfied by the contacts described above. Cf. Fava, 1997 WL 205336, (minimum contacts satisfied in FDCPA suit arising out of defendant's debt collection activity within the state, including sending a debt collection notice and mailings and emails pursuing the debt collection, and making multiple phone calls) (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957 In assessing the reasonableness of the exercise of jurisdiction in a particular case, the court must consider:… the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.

29. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113–14 (1987) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). "On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477

(1985).

30. In this case, plaintiff's prima facie evidence should convince the court that

defendant purposefully directed his debt collection activities at a resident of this

forum "such that he should reasonably anticipate being haled into court there

…," World-Wide Volkswagen, 444 U.S. at 297, and defendant has identified no

compelling factor that makes the exercise of personal jurisdiction in this matter

unreasonable. As persuasively explained by the district court in Sluys: Where

an alleged debtor is located in a jurisdiction and receives documents from a

person purporting to be a debt collector located elsewhere, and the transmittal

of those documents is claimed to have violated the [FDCPA], suits may be

brought where the debtor … receive[s] the communications.

31. Otherwise, one could invoke the protection of distance and send violative letters

with relative impunity, at least so far as less well-funded parties are concerned.

Sluys, 831 F. Supp. at 324.

32. The first criteria for proving sufficient minimum contacts for FDCPA requires a

defendant's contacts with the forum to give rise to plaintiff's cause of action,

which is met the first time defendant mailed a notice or called the plaintiff in

attempts to collect the alleged consumer debt. The second criteria requires a

defendant purposefully to avail itself of the privilege of conducting activities

within the forum. With a license in Georgia as a mortgage lender, registered by the Secretary of State, to do business along with the intentional conduct to continue business with the plaintiff, Nutter purposefully availed itself of the privilege of conducting activities within the forum state of Georgia.

33.The third criteria for minimum contacts requires a defendant reasonably anticipate being haled to court in the forum. This criteria is also met because Nutter's license to do business in Georgia has created a situation in which it should have reasonably anticipated being haled into court here. I would think that the state would want to be aware of businesses that they provide protection for that carry out violations of the law that would not only effect Plaintiff, but others similarly situated in the state of Georgia. If you violate the law anywhere, whether driving, soliciting, selling or collecting a debt, any normal person would be expected to be haled into court where the action took place, no matter how inconvenient it was.

34.The second part of the test for obtaining constitutional personal jurisdiction requires the exercise of personal jurisdiction not offend traditional notions of fair play and substantial justice. Since Nutter is registered as a foreign corporation In Missouri with a license to do business in Georgia, obtains revenue from Georgia, Nutter can hire attorneys from any state and should

reasonably anticipate the need for doing so. This burden would be no different than business in one of the other states. They hired attorneys in Florida to hale plaintiff into court there, and that definitely was not fair play and justice for the plaintiff. Since the physical address of the business is in Missouri, where allegedly all of the records are, how can the burden on the defendant be any more difficult in Georgia than it is in Florida, where they filed the actual suit on the plaintiff.

35. Based on statements above, the court should deny defendant's motion to dismiss because defendant purposefully availed itself of the benefits and protections of the laws of the forum state. *See Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) Therefore, the court has specific jurisdiction over defendant.

36. The court's assumption of jurisdiction over defendant will not offend traditional notions of fair play and substantial justice and will be consistent with the constitutional requirements of due process as defendant has derived financial benefit from doing business in the forum state and has enjoyed the protection of the forum state's laws. *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996); *Metro. Life, 84 F.3d at 568*

37.The court should deny defendant's motion to dismiss because defendant
engaged in continuous and systematic activity in the forum state. See
*Metropolitan Life, 84 F.3d at 567-68.* Accordingly, the court should find that
the pleadings, affirmations, and supporting materials on file constitute a
sufficient averment of credible facts to establish that the exercise of personal
jurisdiction over defendants in this FDCPA action is authorized and complies
with the requirements of due process and defendant's motion to dismiss
plaintiff's amended complaint should be denied.

## OBJECTION TO MOTION TO TRANSFER VENUE

38.Under 28 U.S.C. § 1391(b) venue is proper in the district in which all the
plaintiffs reside or the district in which the claim arose.

39."A threat to sue a consumer for a debt in a distant location where the consumer
did not reside or engage in the transaction would be contrary to 15 U.S.C. §
1692i".

40.Also, the majority of FDCPA cases have held that the plaintiff's claim arises in
the district in which the plaintiff received the offending communication or debt
collection letter. See Bates v. C & S Adjusters, Inc.,980 F.2d 865 (2nd
Cir.1992) (venue in FDCPA case was proper where debtor resided and where

debt collector's demand for payment was forwarded); Paradise, 883 F.Supp. 521
(venue proper where plaintiff received debt collection letter); Russey, 837
F.Supp. at 1105 (consumer's receipt of collection notice was substantial part of
events giving rise to claim under FDCPA); Lachman v. Bank of Louisiana in
New Orleans, 510 F.Supp. 753, 760 (N.D.Ohio 1981) (venue in FDCPA case
was proper where plaintiff received debt collection letter because that is where
the injury occurred).

41. The court's reasoning in Sluys v. Hand, 831 F.Supp. 321, is persuasive:

"Where an alleged debtor is located in a jurisdiction and receives documents
from a person purporting to be a debt collector located elsewhere, and the
transmittal of those documents is claimed to have violated the Act, suits may be
brought where the debtor receive[s] the communications. Otherwise, one could
invoke the protection of distance and send violative letters with relative
impunity, at least so far as less well-funded parties are concerned."Id. at 324;
see also Russey, 837 F.Supp. at 1105 (exercise of its discretion to transfer
venue "would frustrate the Congressional goal that the FDCPA be primarily
enforced through the efforts of the aggrieved consumer") (citations and
quotations omitted); Vlasak v. Rapid Collection Systems, Inc., 962 F.Supp.
1096, 1102-03 (N.D.Ill.1997) (same).

## LEGAL STANDARD UNDER 12 B6

**42.** Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," in order to

"give the defendant fair notice of what the ... claim is and the grounds upon

which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007),

quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.*

At 555. "[W]e do not require heightened fact pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face." *Id.* At 570.

43. The complaint must only include "sufficient factual allegations to provide the

grounds on which the claim rests". *Friends of Lake View School District v.*

*Beebe*, 578 F.3d 753, 762 (8th Cir. 2009).

44. Well-pleaded allegations of fact and every inference fairly deducible therefrom

are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*,

551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and "that

recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

45. When considering Defendant's motion, the court must construe the factual

allegations in the complaint in the light most favorable to the plaintiff." *In re*

*Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Sir. 1996): *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir. 1996). "Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion." *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to some relief, the court should overrule defendant's motion to dismiss.

## OBJECTION TO AN FDCPA CLAIM CANNOT BE PREMISED ON A MORTGAGE FORECLOSURE

46. In this case, plaintiff who is a consumer as defined by 15 USC 1692 a (3) and 15 USC 1692 c(d) has alleged a claim for failing to stop debt collection activity after receiving a debt validation letter in violation of 15 USC 1692gb. Ronald R. Wolfe & Assocs. is an admitted debt collector within the meaning of 15 USC 1692 a(6) and 15 USC 1692 f(6) and has not denied that they received the debt after it was in default and is collecting the debt for another party.

47. Plaintiff has shown in her complaint how defendant has violated numerous counts of 15 USC 1692 and defendant has proven with their own admissions that they are debt collectors as defined by 1692a(6) and 15 USC 1692 f(6). There is no longer an in rem foreclosure action in Florida so plaintiff is confused as to what defendant is referring. Their complaint is only asking for

different amounts of money to settle a default which has not been proven and asking for deficiency judgments which also are asking for money.

48. The action in Florida court is nothing but debt collection no matter what the amount of money requested and is being demanded on a contract that plaintiff never signed. As stated in the motion to dismiss "FDCPA is intended to curtail any objectionable act occurring in the process of collecting funds from a debtor" [ or alleged debtor] which is exactly what defendant is doing, attempting to collect funds from the alleged debtor. Why would they continue to come after the wrong person for two years? If a mortgage foreclosure decree is not a personal decree why are they suing plaintiff personally, and if it is not a money judgment, why are they asking for a money judgment? This debt collector has no rights to the note or mortgage and should never have been the one collecting the alleged debt to start. Defendant alleges in their motion that foreclosing a mortgage is not debt activity; however, plaintiff has only made claims of their misconducts in collecting a debt and has mentioned nothing about the foreclosure. Defendant's initial complaint might have started out as an "in rem" action with the collection of debt, but the amended complaint removed the "in rem" and only asked for money. Plaintiff's claims only have to do with the violations defendants made in their attempts to collect a debt,

nothing about any debt or foreclosure activity. Since the CFPB will state otherwise as far as foreclosure and debt collection I will use their Amicus Brief to support my claims.

49. Congress has granted the Consumer Financial Protection Bureau (the Bureau) the authority to enforce, and to promulgate rules regarding, the FDCPA. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-203, §§ 1002(12)(H), 1022(b)(1), 1061(b)(5), 1089 (2010) (codified at 12 U.S.C. §§ 5481(12)(H), 5512(b)(1), 5581(b)(5), 15 U.S.C. § 1692 *et seq.*). The Bureau is the first agency ever to have general rulemaking authority under the FDCPA.

50. In so doing Plaintiff is taking quotes from the Amicus Brief filed by the CFPB in the 11th Circuit Court of Appeals Birster v. AHMSI 11-13574 G December 11, 2011, to rebut Defendants allegations that foreclosure is not debt collection:

51. The Act defines "debt collector" as a person whose "principal purpose" is debt collection or "who regularly collects or attempts to collect" debts, 15 U.S.C. § 1692a(6). For the purposes of a single provision of the Act, § 1692f(6), the term "debt collector" "also includes" a person whose "principal purpose" is "the enforcement of security interests." *Id.*

52. Although the Act does not define "debt collection," attempting to obtain payment of a consumer debt unquestionably constitutes debt collection under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294(1995).

53. **Debt Collector:** The FDCPA generally defines "debt collector" as an entity

54. whose "principal purpose" is debt collection or "who regularly collects or attempts to collect" debts. 15 U.S.C. § 1692a(6). Under an additional definition applicable for purposes of a single provision, § 1692f(6), the term "debt collector" "also includes" any entity whose "principal purpose" is "the enforcement of security interests." *Id.* Six categories of people are specifically excluded from the definition of "debt collector." *Id.* § 1692a(6)(A)–(F). Enforcers of security interests do not appear on that list.

55. Courts that have concluded that enforcers of security interests qualify as "debt collectors" only for purposes of § 1692f(6) have failed to consider that enforcers of security interests may also "regularly collect" debts and thus qualify as "debt collectors" under the general definition. Notably, unlike other entities, enforcers of security interests are not explicitly excluded from the definition of debt collector. Nearly every court, including every federal appellate court, to have considered this question agrees. This conclusion is also consistent with a prior administrative interpretation of the Act, and furthers the

Act's consumer-protection purpose.

56. ***Debt Collection:*** Attempting to obtain payment of a consumer debt constitutes

debt collection covered by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294

(1995). Nothing in the Act suggests that seeking payment from a debtor ceases

to qualify as debt collection if it accompanies proceedings to enforce a security

interest. That conclusion would create an enormous loophole, allowing debt

collectors to abuse consumers with impunity whenever they happened also to

seek to enforce a security interest. Every federal appellate court to have

published a decision on this issue, and nearly every other court, agrees.

57. Plaintiff alleged that defendant was collecting a debt that they were not entitled

to collect and did nothing to stop collection activity once dispute of debt was

received. This action has nothing to do with a foreclosure of any kind and is

only related to the behavior and conduct of the defendants in their attempts to

collect a debt. Thus, plaintiff has alleged facts sufficient to show that the right

to relief is plausible and above mere speculation.

58. Because plaintiff's factual allegations support a claim upon which relief can be

granted, the court should deny defendant's motion and move defendants to

answer the complaint. In the alternative, if the court determines that plaintiff

has failed to state a claim, plaintiff asks the court to grant leave to amend the

complaint

## OBJECTION TO FDCPA CLAIM BARRED BY OCT 4. LETTER

59.Defendant is correct that there is a letter subject to this lawsuit dated October 4,

2012

60.Defendant would have you believe that this October 4 letter was mailed the date

of the letter, but it was not mailed until days later so it was almost a week

before plaintiff received it.

61. Plaintiff received a debt collection letter at her home residence in Gwinnett

County, Georgia which had a mini Miranda stating:

62.Unless you notify this law firm within thirty (30) days **after your receipt** of
this letter that the validity of this debt, or any portion thereof, is disputed, this
law firm will assume that the debt is valid. If you do notify this law firm in
writing within thirty (30) days after receipt of this letter that the debt, or any
portion thereof, is disputed, this law firm will obtain verification of the debt or a
copy of the judgment against you, if any, and mail it to you. Also, upon your
written request within thirty (30) days after your receipt of this letter, this law
firm will provide you with the name and address of the original creditor, if
different from the current creditor. Ronald R Wolfe & Associates, P.L. is a debt
collector. This law firm is attempting to collect a debt, and any information
obtained will be used for that purpose.

63. Plaintiff mailed a timely dispute in response to the debt collection letter within

those 30 days from her Georgia address.

64. Instead of responding to the timely debt dispute and validate the debt, defendant chose to file a lawsuit in the state of Florida which started the violation once plaintiff was aware of the documents (ineffective service).

65. This has nothing to do with lawsuit being filed in Florida this is about continued debt collection without validation or verification.

66. Defendants were calling plaintiff as a representative of the corporation, who happens to do business in GA

67. This letter does not constitute a violation, as it only contains the mini miranda as required by 15 USC 1692g notifying the plaintiff that she had 30 days to dispute and or validate the debt from the date she received the notice.

Defendant received the validation which was verified through certified receipt. In their long drawn out reasoning for dismissal defendant has never denied receiving plaintiffs timely dispute. Defendant never attempted to validate or verify the debt, as required by 15 USC 1692g, but instead of validating the debt, defendant continued collection activity by filing a lawsuit in Florida court on a debt she never contracted to pay. There is no violation in mailing a collection a letter, no violation on putting a different date on the letter mailed, no violation in plaintiff receiving the collection letter, and no violation in them receiving the validation letter; however, the violation came when they received

the debt validation and did not stop collection activity as required by law and attempted service of a lawsuit in violation of law.

## CONCLUSION

Plaintiff has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies her burden of pleading under the FDCPA at this stage. See Ashcroft v. Iqbal, 129 S.Ct. at 1950. Plaintiff's claims should therefore survive dismissal.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss for Failure to State a Claim and continue to maintain Jurisdiction and venue in this court. In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend her Complaint.

DATED this 6th day of October, 2014

_____

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
404)786-6291
cmrsinc@comcast.net

## VERIFICATION OF OBJECTION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT AND OR CHANGE OF VENUE AND FAILURE TO STATE A CLAIM

Under penalty of perjury, I declare that I am the alleged Plaintiff in the above-entitled matter, I have read the Motion and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated:  October 6, 2014

Signed under 28 USC § 1746(1)
All Rights Reserved Without Prejudice
Without Recourse
Respectfully submitted,

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
(404)786-6291
cmrsinc@comcast.net

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

to Local Rule 7.1(D), I hereby certify that the foregoing was prepared with Times

New Roman (14 point) type, with a top margin of one and one-half

(1 ½) inches and a left margin of one (1) inch.

Sherrie Hampton-Muhamed

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing
**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION
TO DISMISS AMENDED COMPLAINT** to be served in this matter by E-mail,
Fax or U.S. Mail, addressed as follows     :

Filed this 6th day of  October, 2014.


Suzanne Barto Hill, Esquire
Florida Bar No. 0846694
*Admitted Pro Hac Vice*
shill@rumberger.com
Kevin R. Gowen, II, Esquire
Florida Bar No. 0900621
*Admitted Pro Hac Vice*
kgowen@rumberger.com
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133


And with the Clerk of Court through US Mail, Tracking # *IZ IV0 40E 01 83/7 0413*
US and not filed electronically as Plaintiff is excused from filing this document or
thing electronically by Court order.

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA  30039
Phone:  404-786-6291
Facsimile:  770-978-0207
cmrsinc@comcast.net

ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 6 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **EDWARD LORENZO REASE,** | ⎤ |
| | ⎟ |
| **Plaintiff,** | ⎟ |
| | ⎟ |
| **V.** | ⎟ **CIVIL ACTION FILE NO: 1:98-CV-02659-CC** |
| | ⎟ |
| **AT&T CORP.** | ⎟ |
| | ⎟ |
| **Defendant.** | ⎦ |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 29, 2014 ORDER

**COMES NOW** Edward Lorenzo Rease (Plaintiff or Rease) in the above styled civil

action, pursuant to Local Rule 7.2(E), and files this Plaintiff's Motion for Reconsideration of the

Court's September 29, 2014 Order.

## I.    INTRODUCTION

### A.    *Motion for Reconsideration Standards*.

"A Motion for reconsideration should be filed only when, after careful consideration, it is

deemed 'absolutely necessary' by the movant." *Paper Recycling, Inc. V. Amoco Oil Co*., 856 F.

Supp. 671 (N.D. Ga. 1993); see also LR 7.2(e), NDGa (noting that "[m]otions for

reconsideration shall not be filed as a matter of routine practice"). Instead, "the motion should be

reserved for certain limited situations, namely the discovery of new evidence, an intervening

development of change in the controlling law, or the need to correct a clear error or prevent a

manifest injustice."

It is "absolutely necessary" that Plaintiff brings forth his "Motion for Reconsideration"

for good cause. This present matter is only one case involving two cases and four parties (Rease,

1

AT&T, Ballowe, and CWA).

## II.    ARGUMENT

In the District Court's Order [Doc. No. 312] dated September 29, 2014, the Court

referenced *Weeks v. Jones* and *Mullins v. Nickel Plate Mining Co.* to support its ruling.

Consequently, the Honorable Judge Clarence Cooper's Order did not capture the total meaning of

Rule 60(a) and how it is applied to Weeks, Mullins, or Rease' case--there are similarities and

differences. Regardless, Weeks and Mullins can be used to support Rease' motion to have

clerical errors corrected.

## A.    *Rule 60(a) as applied in Weeks v. Jones.*

In regards to Weeks, it is unlike this present matter for most parts. However, Weeks and

Rease are similar because both district courts erred by revisiting their former ruling based on

their assessment of the merits. **(1)** Weeks involved the determination of whether the right to

appointment of counsel in capital habeas corpus cases under 21 U.S.C. § 848(q)(4)(B) depends

on the ultimate merits of a death-sentenced prisoner's habeas claims. **(2)** After appointing

counsel, **(3)** the district judge sua sponte found that the federal habeas petition was frivolous, **(4)**

set aside the appointment order under Federal Rule of Civil Procedure 60(a), and **(5)** thereby

prevented payment of the capital petitioner's attorneys.

The petitioner-appellant, Varnall Weeks, was executed on May 12, 1995. Preceding his

execution, Weeks's attorneys challenged his death sentence in state and federal court on the basis

of his mental incompetence to be executed. Because Weeks was indigent, his attorneys

represented him without any payment from their client, and they received no compensation for

their representation from the State of Alabama. Following the denial of Weeks's second request

for post conviction relief by the Alabama courts, **(6)** his counsel filed a petition for writ of habeas

corpus in federal court in the Middle District of Alabama on May 10, 1995, **(7)** as well as a motion requesting appointment as counsel under 21 U.S.C. § 848(q) and **(8)** a motion to proceed in forma pauperis. That same day, **(9)** the district court granted the motions for appointment of counsel and **(10)** to proceed in forma pauperis, but **(11)** it denied Weeks's petition for habeas relief on the merits and **(12)** denied a stay of execution.

On May 11, 1995, Weeks's counsel appealed the district court's denial of a certificate of probable cause and sought a stay of execution in this court. A majority panel addressed the merits of his incompetency claim and concluded, based on the fact-findings of the state trial judge and the evidence presented at the state evidentiary hearing, that Weeks was not mentally unfit to be executed. *Weeks v. Jones*, 52 F.3d 1559, 1561-62 (11th Cir.).

**(13)** In July, 1995, Weeks's counsel contacted the district court clerk's office because they had not yet received their vouchers needed to submit fee requests. **(14)** On August 2, 1995, the district court sua sponte issued an order setting aside its previous order appointing counsel for Weeks under § 848(q) "pursuant to Rule 60(a), Federal Rules of Civil Procedure." R2-22-2.

Significantly, in Weeks the statute specifically contemplates that a capital inmate shall have federally appointed counsel in habeas proceedings involving competency to be executed. 21 U.S.C. § 848(q)(8). In a successive death penalty case that raised competency to be executed, the Fifth Circuit reversed the district court's denial of appointment of counsel under § 848(q)(4(B) and explained that "[o]n its face, § 848(q)(4)(B) does not condition the appointment of counsel on the substantiality or non-frivolousness of petitioner's habeas claims." *Barnard v. Collins*, 13 F.3d 871, 879 (5th Cir.), cert. denied, 510 U.S. 1102, 114 S.Ct. 946, 127 L.Ed.2d 363 (1994). **(15)** In connection with Weeks's federal habeas petition, the district court correctly appointed Week's counsel, who had represented him in his state post conviction proceedings as well as

3

prepared his habeas petition without compensation. **(16) The district court erred in revisiting its former ruling based on its assessment of the merits of Week's habeas petition after his execution.**

**(17) The district court also erroneously based its sua sponte order that denied Weeks's counsel's appointment on Federal Rule of Civil Procedure 60(a)**, which permits corrections "at any time" of "[c]lerical mistakes" in judgments and orders "arising from oversight or omission." Therefore, **(18)** the district court not only erred legally in its subsequent sua sponte denial of Weeks's counsel's appointment motion, **(19)** but it also erred procedurally in using Rule 60(a) as authority for its "changed ruling." **(20)** The district court was reversed in Weeks.

## B.   *Rule 60(a) as applied in Mullins v. Nickel.*

**(1)** Mullins involves an appeal from a district court order that retroactively certified a partial summary judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b). **The District Court's order was vacated to the extent it purports to be retroactive.**

Appellees, trustees of the United Mine Workers of America Health and Retirement Funds, brought suit against Appellant Nickel Plate Mining Company in the Northern District of Alabama Jurisdiction was based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976) and § 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1132 (1976).

The complaint alleged that Nickel Plate and the United Mine Workers of America (UMW) entered into the National Bituminous Coal Wage Agreement of 1974 and the National Bituminous Coal Wage Agreement of 1978. Under the agreements Nickel Plate was obligated to make monthly contributions to the UMW Health and Retirement Funds. The trustees, asserting that Nickel Plate breached both agreements, sought injunctive relief, damages and attorney's

4

fees.

**(2)** Following a series of procedural maneuvers, the parties reached a settlement. **(3)**

Nickel Plate executed a promissory note. **(4)** The district Court acting on its own motion

dismissed the action. Within three months of the dismissal trustees petitioned for reinstatement

of the action and for leave to amend their complaint. The district court granted both motion. The

amended complaint alleged Nickel Plate had breached its obligations under the promissory note.

The trustees moved for partial summary judgment based on breach of the promissory

note, and on October 23, 1981 the district court granted the partial summary judgment in an

order stating:

> ORDERED, ADJUDGED AND DECREED that plaintiffs have and recover of
> defendants Nickel Plate Mining Company, Inc. and Lake Mining Company, Inc. the sum
> of Five Hundred Twenty Thousand Thirty-Seven and 44/100 Dollars ($520,037.44), for
> which let execution issue.

The trustees filed an affidavit requesting that a writ of garnishment be served upon

Birmingham Trust National Bank. The writ was issued and notice was given to Nickel Plate.

Within ten days Nickel Plate filed a separate action for wrongful garnishment which was

subsequently merged into the instant action as a counterclaim.

The trustees later moved for the certification of the October 23 partial summary judgment

as a final judgment pursuant to Fed.R.Civ.P.54(b). On March 4, 1982 the district court granted

the motion and amended the October 23 judgment, was amended to read as follows:

> It is hereby ORDERED, ADJUDGED AND DECREED that plaintiffs have and recover
> of defendants Nickel Plate Mining Company, Inc. and Lake Mining Company, Inc. the
> sum of Five Hundred Twenty Thousand Thirty-Seven and 44/100 Dollars ($520,037.44).
> The court expressly determines that there is no just reason for delay in the entry of a final
> judgment for the aforesaid amount. This judgment is ordered entered as a final judgment
> under FRCP 54(b). Execution on this judgment and proceedings to enforce this judgment
> may be taken at any time after the expiration of 10 days from October 23, 1981.

**(5)** The Court failed, however, to make the determinations and directions contemplated

5

by FRCP 54(b) although it was the court's intention to do so. Actually, **(6)** Rule 54(b) provides that in actions involving multiple claims for relief an order that finally disposes of one or more but fewer than all the claims does not terminate the action in the district court. Such an order is subject to revision at any time prior to entry of a final decision unless the district court: **(7)** expressly determines that there is no just reason for delay; and **(8)** expressly directs the entry of judgment. **(9)** In the absence of a certification by the district court that meets both of these requirements a determination as to some but not all claims does not qualify as a final judgment and is ordinarily an un-appealable interlocutory order. *__Huckeby v. Frozen Food Express__*, 555 F.2d 542 (5th Cir. 1977); *__B. B. Adams General Contractors, Inc. v. Department of Housing and Urban Development__*, 501 F.2d 176 (5th Cir. 1974).

In summation, **(10)** Rule 54(b) envisions that adjudication as to some but not all claims in a multiple-claim suit are to be final and appealable only upon an exercise of the district court's discretion; the requirement that the district court to make an explicit entry of judgment and certification, which serves the purpose of informing the parties the district court intends to exercise that discretion. *__Ryan v. Occidental Petroleum Corp__*., 577 F.2d 298 (5th Cir. 1978).

**(11)** The partial summary judgment entered October 23 was not certified pursuant to rule 54(b). **(12)** On March 4, 1982 the district court indicated that its failure to certify the judgment was caused by mistake or oversight. **(13)** The court then entered an amended judgment that retroactively made final the October 23 judgment. **(14)** The October 23, 1981 judgment was also interlocutory. **(15)** The district court purported to act pursuant to Fed.R.Civ.P. 60(a). **(16)** The trustees contend that the court had the power to act under rule 60(b). **(17)** The district court, therefore, had the power to certify the judgment as final pursuant to rule 54(b), **(18)** but it did not have the power to make that certification retroactive. **(19)** To hold otherwise would deprive

6

Nickel Plate of its right to appeal. **(20)** The district court and the parties may have considered the October 23 judgment to be a "final judgment," but it was not, **(21)** and absent a rule 54(b) certification Nickel Plate had no right to appeal. *Ryan*, 577 F.2d 298. **(22)** If the retroactive certification was allowed to stand, an appeal would have been untimely and would have had to be dismissed.

**(23)** The judgment of the district court was **VACATED** in part and **REMANDED** consistent with the aforementioned.

## C. *Rule 60(a) as Applied in Rease v AT&T*.

Rule 60(a) authorize the District Court to enter a corrected judgment and affirm its decision to do so. It allows a district court to correct a clerical error in a judgment if the error causes the judgment to inaccurately reflect the results of the court's adjudication.

In the 5th Circuit past decision it has looked at three criteria to determine whether a mistake can be corrected under Rule 60(a): **(1)** the nature of the mistake; **(2)** the district court's intent in entering the original judgment; and **(3)** the effect of the correction on the parties' substantial rights. *There is substantial overlap between these three criteria*.[1] Each is but a slightly different way of expressing the core idea that resort to Rule 60(a) may be had when "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated."[2] Accordingly, Rule 60(a) authorized the District Court to correct the judgment so as to reflect that Rease claims were dismissed "without prejudice."

### 1. *The nature of the mistake*.

To be correctable under Rule 60(a), the mistake must not be one of judgment or even of

---

[1] *Cf. Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011)(explaining that while the five factors used to determine whether a plaintiff has prudential standing under the Lanham Act "do not pose five wholly distinct inquires..., each turn the prism illuminates a slightly different facet of a single underlying question").

[2] *Bernstein v. Lefrak* (In re *Frigitemp Corp.*), 781 F.2d 324, 327 (2d Cir. 1986).

misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.'"[3] Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope;[4] missteps involving substantive legal reasoning are not.[5] For example, Rule 60(a) allows a district court to amend its judgment to modify a jury's damages award where the jury had committed a simple mathematical error while computing the damages.[6] But a district court cannot rely on Rule 60(a) to amend a judgment that awards specific performance so that it instead awards both specific performance and money damages.[7] **In short, "A Rule 60(a) motion can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.'"[8]**

Here, the change to the judgment targets a clerical mistake. Oversight, inadvertently or erroneously designating a dismissal as being "with prejudice" instead of "without prejudice" is the type of rote, typographical error of transcription that could be committed by a law clerk or a judicial assistant. It is not an error of judgment or legal reasoning, as no chain of legal reasoning could possibly lead a court to conclude that the judgment should be granted "with prejudice." This case was dismissed **"without prejudice"** in an Order [Doc. No. 156] dated March 15,

---

[3] In re **Gallardi**, 745 F.2d 335, 337 (5th Cir. 1984) (per curiam) (quoting **Dura-Wood Treating Co., Div. of Roy O. Martin Lumber Co. v. Century Forest Indus., Inc.**, 694 F.2d 112, 114 (5th Cir. 1982)). "Amanuensis" is a synonym for "scrivener," a person whose job is to write from dictation or to copy manuscript.

[4] See **Sherrod v. Am. Airlines, Inc.**, 132 F.3d 1112, 1117 (5th Cir. 1998) ("Rule 60(a) may be used to correct 'mindless mechanistic mistakes' which require no additional legal reasoning." (quoting **United states v. Kellogg** (In re **W. Tex. Mktg. Corp.**), 12 F.3d 497, 504 (5th cir. 1994))).

[5] See In re **Am. Precision Vibrator Co.**, 863 F.2d at 430 (explaining that Rule 60(a) "does not encompass errors that involve judgment or discretion"); see also **Rutherford v. Harris County**, 197 F.3d 173, 190 (5th Cir. 1999( ("[C]orrection of an error in substantive judgment is outside the reach of Rule 60(a)."); **United States v. Griffin**, 782 F.2d 1393, 1397 (7th Cir. 1986) ("[F]actual and legal misconceptions, as well as exercises of discretion, may not be corrected under Rule 60(a), while blunders in execution may be."); **Jones v. Anderson-Tully Co.**, 722 F.2d 211, 212 (5th Cir. 984) ( per curiam) ("Rule 60(a) clerical mistakes...are not errors of substantive judgment.").

[6] **United States ex rel. Miss. Road Supply Co. v. H.R. Morgan, Inc.**, 542 F.2d 262, 269 (5th Cir. 1976).

[7] **Trahan v. First. Nat'l Bank of Ruston**, 720 F.2d 832, 833-34 (5th Cir. 1983).

[8] In re **Gliardi**, 745 F.2d at 337 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 2854 (2d ed. 1977)).

8

2002. On March 28, 2002, AT&T filed a motion [Doc. No. 160] to amend [Doc. No. 156] order of dismissal to a dismissal "with prejudice." Judge Cooper granted the Defendant's motion to dismiss "with prejudice" in a Order [Doc. No. 169] on November 25, 2002. The District Court's Order [Doc. No. 169] was vacated and remand by the Appellate Court in a Judgment [Doc. No. 179] dated September 5, 2003. It is quite clear that Plaintiff had the right to re-file his complaint due to the original judgment being dismissed "without prejudice." Unfortunately, the Clerk Office through clerical error did not properly process the Appellate Court's order to vacate and remand per Local Rule 58.3(B)[9] and there could have not be a proper certification as a result thereof. This misstep is not involving substantive legal reasoning but is a clerical mistake that is mechanical in nature that is within Rule 60(a)'s scope.

## 2. *The District Court's intent in entering the original judgment.*

A district court's authority under Rule 60(a) is also limited to making corrections that are consistent with the court's intent at the time it entered the judgment.[10] Rule 60(a) does not "provided for the correction of the deliberate choice of the district judge,"[11] even where that deliberate choice is based on a mistake of law.[12] Rather, "Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake of

---

[9] **Judgment Modified, Vacated, or Reversed.** When the judgment of this court has been modified, vacated, or reversed on appeal, the clerk shall immediately present a proposed order to the court making the remittitur the judgment of this court and shall notify counsel and/or the parties of the entry of said order and that they are required to prepare and present promptly to the court any such further orders as may be required.

[10] *See In re Gallardi*, 745 F.2d at 337 (limiting Rule 60(a) to corrections that cause the judgment to reflect what "was obviously intended but inadvertently omitted by the district court at the time the original order was entered"); *Warner v. City of Bay St. Louis*, 526 FF.2d 1211, 1212 (5th Cir. 1976) (explaining that Rule 60(a) targets errors "that cause the record or judgment to fail to reflect what was intended at the time of trial").

[11] *Bowen Inv., Inc. v. Carneiro Donuts, Inc.*, 490 F.3d 27, 29 (1st Cir. 2007) (citation and internal quotation marks omitted).

[12] *See Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 23 F.3d 616, 623 (7th Cir. 1997) ("In deciding whether Rule 60(a) applies, we have to distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error. Rule 60(a) allows for the former but not the latter."

oversight did another."[13] The 5th circuit ascertain the district court's intent at the time it entered the judgment by reviewing any other relevant documents that were produced contemporaneously with the judgment, such as a memorandum opinion or order,[14] findings of fact and conclusions of law,[15] the transcript of a hearing,[16] or a signed stipulation of the parties.[17]

The 5th Circuit's precedent lends strong support to the conclusion that Rule 60(a) allows a judgment's "with prejudice" or "without prejudice" denomination to be changed when the change comports with the intent conveyed by the substance of the district court's adjudication. In *Logan v. Burgers Ozark Country Cured Hams*, the district court's memorandum opinion and judgment both stated that the claims at issue were being dismissed "without prejudice."[18] When the district court attempted to change the judgment so that the dismissal would be "with prejudice," the 5th Circuit held that Rule 60(a) did not authorize the amendment. The reasoning of the memorandum order indicated that the correction was substantive, not clerical.[19] What was an unstated assumption in Logan--that the change would have been clerical had the court's memorandum order reflected an intention that the dismissal be with prejudice--became a stated

---

[13] *Dura-Wood*, 694 F.2d at 114; see also *Chavez v. Balesh*, 704 F.2d 774, 776 (5th Cir. 1983) ("Rule 60(a) concerns 'what is erroneous because the thing spoken, written, or recorded is not what the person intended to speak, write or record,'" (quoting *Allied Materials Corp. v. Superior Prods. Co.*, 6220 F.2d 224, 226 (10th Cir. 1980).

[14] *See, e.g., Stovall v. Ill. Cent. Gulf R.R.*, 722 F.2d 190, 191 (5th Cir. 1984) (using the "memorandum opinion ... filed contemporaneously with the judgment" to resolve an ambiguity in the judgment); *Kokomo Tube*, 123 F.3d at 623-24 (same).

[15] *See infra* notes 48-53 and accompanying text.

[16] *See, e.g., Martin Midstream Partners v. Boone Towing Inc.*, 207 F.App's 439, 441 (5th Cir. 2006) (per curiam) (unpublished) (holding that an error in a judgment was correctable under Rule 609a) where it was "clear from the trial transcript" that the correction would effectuate the district court's intent); see also infra note 35 and cases cited therein.

[17] *See, e.g., Griffin*, 782 F.2d at 1394-97 (upholding a change entered under Rule 60(a) that corrected the rate at which interest would run on the judgment so that it comported with the rate to which the parties had agreed in a signed stipulation); see also *Dura-Wood*, 694 F.2d at 113-14 (upholding the district court's authority under Rule 60(a) to correct a judgment's award of $2,100 in attorneys' fees where the parties had stipulated that the fee award should be $6,780).

[18] 263 F.3d 447, 454 (5th Cir. 2001).

[19] *Id.*

10

holding in *Miller v. American International Group*.[20] In *Miller*, the district court's original final judgment was ambiguous as to whether the dismissal was with prejudice or without prejudice. To resolve that ambiguity, the Fifth Circuit looked to the reasons the district court gave for dismissing the case in the order that accompanied the judgment. The order made it clear that the dismissal was intended to be with prejudice. Accordingly, the Fifth Circuit held that Rule 60(a) empowered the district court to amend its judgment to clarify that the dismissal was with prejudice.[21] **Therefore, this Court should uphold the "intent" of Rease' original judgment being dismissed "without prejudice."** This 5th Circuit holding was also consistent with two Ninth Circuit decisions that held that a judgment's stated prejudicial effect can be changed under Rule 60(a) when the change is consistent with the intent expressed by the district court during the hearing at which dismissal was granted.[22]

The Honorable Judge Clarence Cooper referenced *Weeks v. Jones* and *Mullins v. Nickel* to rule against Rease in the Order [Doc. No. 312] dated September 29, 2014. However, in Weeks the district court erred procedurally by using Rule 60(a) as authority for its "changed ruling." In other words, the district court in Weeks changed the "intent" or its initial ruling as in this instant matter. As a result, the district court was revered in Weeks and the district court should be reversed here as well.

In Mullins the district court "failed" to make the determinations and directions contemplated by FRCP 54(b) although it was the court's intention to do so. Rule 54(b) envisions

---

[20] 125 F.App'x 578 (5th Cir. 2005) (per curiam) (unpublished). Although *Miller* is an unpublished decision and thus is not binding precedent, see 5th Cir. R. 47.5.4, we find its reasoning persuasive.
[21] *Id.* at 579.
[22] See *Korea Exch. Bank v. Hanil Bank, Ltd.* (In re Jee), 799 F.2d 532, 535 (9th Cir. 1986) (allowing a judgment reflecting a dismissal with prejudice to be changed under Rule 60(a) to reflect a dismissal without prejudice where the transcript of the dismissal hearing showed that the district court intended to grant a voluntary dismissal without prejudice); *Huey v. Teledyne*, 608 F.2d 1234, 1237 (9th Cir. 1979) (allowing a judgment reflecting a dismissal without prejudice to be changed under Rule 60(a) to reflect a dismissal with prejudice where the transcript of the dismissal hearing showed that the district court intended to dismiss the case with prejudice for want of prosecution).

11

that adjudication as to some but not all claims in a multiple-claim suit are to be final and
appealable only upon an exercise of the district court's discretion; the requirement that the
district court to make an explicit entry of judgment and certification, which serves the purpose of
informing the parties the district court intends to exercise that discretion. ***Ryan v. Occidental
Petroleum Corp.***, 577 F.2d 298 (5th Cir. 1978). The partial summary judgment entered October
23 was not certified pursuant to rule 54(b) and the district court could not retroactively make a
change because it is not what was initially entered.

However, changing the judgment in this case to reflect that Rease' claims had been
dismissed "without prejudice" is in the keeping with the District Court's intent at the time it
entered the order. ***It requires no speculation to reach this conclusion***. The honorable Judge
Clarence Cooper's Order [Doc. No. 156] dated March 14, 2002 (Entered: March 15, 2002) stated,
"IT IS HEREBY ORDERED, for good cause shown, that Plaintiff's oral Motion to Dismiss is
**GRANTED**. This case is hereby **DISMISSED WITHOUT PREJUDICE**." "[A] judge's own
subsequent statements of his intent" are reliable evidence in the Rule 60(a) context.[23] Even
putting those subsequent statements aside, it is apparent from the original record that the District
Court intended to grant Rease' motion to dismiss "without prejudice." In an Order [Doc. No. 232,
p. 2] dated September 30, 2005, Judge Cooper further stated, "After construing Plaintiff's
statements to be tantamount to a motion for voluntary dismissal, the Court dismissed Plaintiff's
case without prejudice" [Doc. No. 156]. Even after welcoming the dismissal "without prejudice,"
it did not stop the defendant AT&T from filing a motion to have the dismissal change to a
dismissal "with prejudice." In fact, on March 28, 2002, AT&T filed a motion [Doc. No. 160] to
amend [Doc. No. 156] order of dismissal to a dismissal "with prejudice." Judge Cooper granted

---

[23] *In re Jee*, 799 F.2d at 535 (citing ***Jones & Guerrero Co. v. Sealift Pac.***, 650 F.2d 1072, 1074 (9th Cir. 981) (per curiam)).

12

the Defendant's motion to dismiss "with prejudice" in a Order [Doc. No. 169] on November 25,
2002. The District Court's Order [Doc. No. 169] was vacated and remand by the Appellate Court
in a Judgment [Doc. No. 179] dated September 5, 2003 (Entered: October 7, 2003). The
Appellate Court stated, "Although Rease did not make any motion, AT&T stated that it did not
oppose a voluntary dismissal of the case" (p. 2). The Appellate Court also stated that "the court
[District Court] interpreted Rease's comments as a motion for voluntary dismissal and granted
the motion to dismiss without prejudice, issuing a written order to that effect one day later, on
March 14, 2002" (pp. 2-3). The Appellate Court further stated that "it was the trial judge [Judge
Cooper] who construed his lack of preparation as a "motion for voluntary dismissal" (p. 3).
Evidence shows that defendant AT&T knew the Court's intent as well. AT&T filed a response
[Doc. No. 181, p. 2] dated October 27, 2003, and it indicated that as of that date "AT&T believes
that Rease's Motion should be denied and that the case currently stands dismissed without
prejudice. The Court of appeals vacated this Court's November 25, 2002 order, which had
converted the prior dismissal without prejudice to dismissal with prejudice. The effect of the
Court of Appeals' Order appears only to alter the "with prejudice" versus "without prejudice"
status." Thus, AT&T's argument is that "When the November 25, 2002 Order was vacated, the
case returned to the procedural posture that it had prior to entry of that Order. Therefore, the case
stands dismissed without prejudice pursuant to the Court's prior Order of March 14, 2002." And,
it has always been the plaintiff Rease' position that the case was dismissed "without prejudice."
Accordingly, the District Court, the Appellate Court, the Defendant, and the Plaintiff all believe
that the "**intent**" of the District Court original dismissal and the Judgment of the Appellate Court
was a dismissal "without prejudice."

## 3.     *The effect of the correction on the parties' substantial rights.*

13

Finally, Rule 60(a) "applies to all clerical miscues, trivial and important alike," including those that "unsettle expectations" and "have significant effects."[24] **The relevant inquiry under Rule 60(a) is not whether making the correction will have any effect on the parties' rights and obligations under the judgment. MOST OF THE TIME, IT WILL.**[25] Rather, *the question is whether granting the motion would require the District Court either to adjudicate an issue it has not previously reached or to make a substantive modification to a prior adjudication.* Where the record makes it clear that an issue was actually litigated and decided but was incorrectly recorded in or inadvertently omitted from the judgment, the District Court can correct the judgment under Rule 60(a), even where doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position.

A pair of cases **(Rutherford and Chavez)** highlights the distinction between a correction to a judgment that is authorized by Rule 60(a) even though it has significant consequences for the parties and a correction the Rule does not authorize because it impermissibly affects the parties' substantial rights. In *Rutherford v. Harris County* a jury had awarded damages to an employment-discrimination plaintiff, and the parties had stipulated that the district court would decide the question of back pay.[26] **(1)** The court made findings of fact and conclusions of law and then entered a judgment that reflected only the damages awarded by the jury. **(2)** The district court later invoked Ruled 60(a) and amended both the judgment and the findings and conclusions to include back pay and prejudgment interest.[27] **(3)** The Fifth Circuit reversed. **(4)** Because the original findings and conclusions did not include a finding that the plaintiff was entitled to back pay or prejudgment interest, the failure to include those awards in the original judgment was an

---

[24] *Griffin*, 782 F.2d at 1397.

[25] *See id.* ("Why else do people seek alterations of judgments?").

[26] 197 F.3d at 178.

[27] *Id.*

14

"error in substantive judgment that is outside the reach of Rule 60(a)."[28] Here, Rease' original judgment would not be an "error in substantive judgment that is outside the reach of Rule 60(a)" if the District Court change the original judgment back to a dismissal "without prejudice" judgment, it actual finding in the District Court initial ruling. The District Court in this matter reference Weeks and Mullins [Doc. No. 312] to deny Plaintiff's Motion to Have Clerical Errors Corrected [Doc. No. 311]. Similar to Rutherford, both Weeks and Mullins is unlike Rease' case in that they changed (RETROACTIVELY) the intent of the original judgment findings and it is a main reason why the district courts in all three cases were reversed.

By contrast, in *Chavez v. Balesh*, (1) the district court's findings and conclusions stated that the plaintiff was entitled to $2,000 of liquidated damages, but the final judgment omitted liquidated damages.[29] (2) Because the final judgment recited that it was entered "in accordance with" the findings and conclusions, the 5th Circuit concluded that correcting the judgment to include the $2,000 in liquidated damages would not require any new substantive judgment and thus was permissible under Rule 60(a).[30] (3) The district court had already determined that the plaintiff was entitled to liquidated damages; the correction merely performed the clerical task of conforming the judgment to what the court had actually decided when making its findings.[31] **Chavez is extremely similar to Rease' case in that correcting the judgment to include the dismissal being "without prejudice" would not require any new substantive judgment and thus is permissible under Rule 60(a).**

In this case, changing the judgment to reflect that the case was dismissed "without

---

[28] *Id*. at 190.

[29] 704 F.2d at 775

[30] *Id*. at 776-77.

[31] See also Dura-Wood, 694 F.2d at 113-4 (upholding an amendment of the judgment under Rule 60(a) that increased the size of an attorneys'-fees award where the parties had stipulated to the size of the fee award and the court's findings of fact stated that the court was awarding attorneys' fees "as stipulated by the parties").

15

prejudice" will not affect the defendants (AT&T, Ballowe, and CWA) substantive rights in a manner prohibited by Rule 60(a). *A correction would not require the District Court to resolve an issue of substantive law it had not previously reached.* Just as the court's findings and conclusions in Chavez evinced a clear intention to award liquidated damages. Here, in addition to the motion being dismissed "without prejudice" [Doc. No. 156] on March 15, 2002, it is also undeniable that this action came before the Court for a trial for four failure to promote claims on March 11, 2002 [See, Doc. No. 232, p. 2]. According to the District Court here in Rease' case, "the Court may have committed error in ordering that the case be restored to the trial docket rather than leaving the case as dismissed without prejudice, as Defendant argued from the outset. The dismissal without prejudice as to the four failure to promote claims would have effectively put Plaintiff in the same position he was in as if he had never brought the claims. That is, Plaintiff would have been permitted to file a new action with respect to the four failure to promote claims. See Dade County v. Rohr Indus., 826 F.2d 983, 989 (11th Cir. 1987) (stating that the "voluntary dismissal of [a] federal action has the effect of placing the parties in a position as if the suit had never been filed"). Indeed to prosecute the claims, Plaintiff would have been required to re-file the case, pay a new filing fee, and allege the claims in a new complaint. See Offbeat, Inc. v. Cager, No. Civ. A. 94-2796, 1997 WL 83140, at *1 (E.D. La. La. Feb 26, 1997) (holding that an order dismissing a case without prejudice requires the plaintiff to re-file the case, pay a new filing fee, and file a new complaint); Hickman v. Lively, 897 F. Supp. 955, 960 (N.D. Texas 1995) ("The 'without prejudice' condition permits a plaintiff to refile the complaint as if it had never been filed." [Doc. No. 232, p. 5).

## D.    *Costs Erroneously Taxed Against Rease on April 16, 2002.*

This case was "terminated" on March 15, 2002 immediately after the order to dismiss

16

"without prejudice" ruling. Nevertheless, the Clerk Office continued to accept filings and pleadings after the termination of the case. For instance, the jury trial before the Honorable Judge Clarence Cooper continued on March 18, 2002 [Doc. No. 157]. The Clerk Office simply error by not recognizing the termination and erroneously accepted pleadings and filings. The defendant AT&T filed a motion [Doc. No. 160] to amend [Doc. No. 156] order of dismissal to a dismissal "with prejudice" even though they are the ones that "welcome" the dismissal and the District Court construing the dismissal as being "without prejudice." On April 9, 2002, Rease filed a response [Doc. No. 162] in opposition to [Doc. No 160] motion to amend [Doc. No. 156] order of dismissal. Ironically, the defendant AT&T filed a "Bill of Costs [Doc. No. 167] on April 12, 2002, but it was entered April 16, 2002. Due to clerical error, costs were taxed against pro se Plaintiff in the amount of $11,508.01 [Doc. No. 168] on April 16, 2002. Costs were applied prior to Rease being given an opportunity to respond, and there was no apparent reason for the tax because at that point in the process the complaint was dismissed "without prejudice" [Doc. No. 156] on March 15, 2002. Thus, the ruling was in Plaintiff's favor and not the Defendant because Plaintiff was due four jobs and the right to re-file his remaining claims. Additionally, the order [Doc. No. 169] to dismiss the complaint "with prejudice" did not occur until seven months later on November 25, 2002. And, the order [Doc. No. 169] to dismiss the complaint "with prejudice" was vacated and remanded in an Appellate Court's order [Doc. No. 179] dated September 5, 2003, but it was filed in the District Court on October 7, 2003 and it was entered on October 14, 2003. The Clerk Office simply error by taxing costs against the Plaintiff. *The taxed costs in the amount of $11,508.01 was a clerical error*.

## E.    *Clerk's Judgment Issued Through Clerical Error*.

The case was reopen through clerical error on October 14, 2003. Motion to reopen

17

discovery was granted in an order [Doc. No. 192] dated July 30, 2004. On September 30, 2005, and Order [Doc. No. 232] was issued by the Court granting AT&T's "Second Motion for Summary Judgment" [Doc. No. 212]. A summary judgment suppose to be based on the merits of the case. **A second summary judgment was an error as it allowed AT&T a second chance.**

Civil case was terminated on September 30, 2005 but entered on October 3, 2005. The Clerk's Judgment [Doc. No. 233] was erroneously applied due to clerical error on October 3, 2005, which is the same date the civil case termination was entered and the same date that the order [Doc. No. 232] was entered as well. However, the Clerk's Judgment was filed after the case had already been terminated. Additionally, the Appellate Court issued an order [Doc. No. 179] vacating and remaining the District Court's order [Doc. No. 169]. It placed Plaintiff back in his original position of having the case dismiss "without prejudice," but once again AT&T was given a second chance. Beside these clear clerical errors, the Clerk Office did not properly process the Appellate Court's order to "vacate and remand" per Local Rule 58.3(B). Accordingly, *the Clerk's Judgment [Doc. No. 233] was issued through clerical error.*

## F.   *Costs was Erroneously Taxed Against Rease again on November 3, 2005.*

Costs were erroneously taxed against Rease a second time in the amount of $14,499.41 [Doc. No. 241] on November 3, 2005 due to "Bill of Costs" [Doc. No. 240] request from the defendant AT&T the previous day on November 2, 2005. Thus, costs were taxed immediately once again prior to Plaintiff being provided an opportunity to respond. What's more, costs were taxed twice against Rease for the same case. Rease filed a timely response [Doc. No. 242] on November 7, 2005, but the Clerk Office error by not considering Rease' response when they applied the tax. The tax should have not occurred. *The taxed costs in the amount of $14,499.41 need to be removed.*

## G.    *Out-of-Order Docket Filings*.

Plaintiff take issue with the District Court stating that the "filings were not docketed erroneously" (Order, p. 1). All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket. The purpose of a Rule 60(a) motion is to make the judgment or record speak the truth but the District Court seem to believe that the "Docket Report" can be used to say something other than what originally was pronounced. Therefore, the "Docket Report" here in this matter does not speak the truth.

The alleged respective filings dates on their own do not determine if the filings were docketed erroneously or not. The "docket numbers" and the actual dates the filings were "entered" play a role that is just as important in determining the accuracy of the docket report. In one particular situation, it took the clerk office three months to enter an order [Doc. No. 165]. Why? Such an error allow and individual to question the records accuracy. There are other examples such as docket numbers 19, 21, 20, and 22 that are out of order. On the surface it appears that all is well. However, a closer look at the docket filings shows that the "dates that these docket numbers were entered" are "not the same or close to the actual filing dates." Docket number **19** was actually filed on April 29, 1999 but was entered eleven days later on May 10, 1999. How is this fair to the parties? There is a seven days difference between the filing date (05/11/99) and the date entered (05/18/99) for docket number **21**; a seven days difference between the filing date (05/11/99) and the date entered (05/18/99) for the **termination of submissions**; there is a six days difference between the filing date (05/12/99) and the date entered (05/18/99) for docket number **20**; and there is a six days difference between the filing date (05/14/99) and the date entered (05/20/99) for docket number **22**. These clerical errors can

19

lead to the manipulation of the procedural process; it affect what and when information is known; and, it can affect when information is received and when responses can be made. *Was filings sent to the parties on the date of the filings or on the date the filings were entered*? This simple quandary also made it difficult for Rease to respond to filings such as orders due to the saturation of filings (orders) around the same time period. An order [Doc. No. 18] was entered April 28, 1999, an order [19] was entered May 10, 1999, and an order [21] was entered on May 11, 1999. Multiple orders made it very difficult for the pro se Plaintiff to make timely and thorough pleadings. Furthermore, the dates that filings were "entered" had a bearing on which filings and pleadings were considered within the orders OR when the District Court considered the material in such filings and pleadings. These are clerical mistakes that are mechanical in nature that is within Rule 60(a)'s scope.

The availability of information based on when it was filed or not filed, entered or not entered, and received or not received is vital to any case. In regards to documents 142, 146, 143, 144, 145, 148, 149, 150, 147, and 151, pro se Plaintiff was also flooded with information over a short period and it made it even more important for information to be properly filed and entered. Specifically, over a period of a week Rease had to respond to four motions, five orders, a trial brief, a proposed amended pretrial order, a proposed verdict form, a proposed jury instructions, and a notice of filing of witnesses while preparing for and attending trial. This enormous task was made even more difficult for pro se Rease due to the clerical errors. Rule 60(a) clerical mistakes...are not errors of substantive judgment.

### III.    CONCLUSION

In conclusion, the District Court can make a correction to a mistake in its judgment that is clerical in nature--as it is the nature of the mistake. A correction in this case is consistent with the

Court's intent at the time it entered the original judgment. And the correction will not expand or modify the Court's prior adjudication in a manner that affected the parties substantive rights. As a result, the District Court will be acting within the scope of the authority conferred by Rule 60(a) when it correct the judgment to reflect that Rease claims had been dismissed "without prejudice."

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 60(a) and Local Rule 7.2(E), Plaintiff respectfully requests that this Court correct the clerical errors and **GRANT his Motion**. To date, AT&T has not responded in this present matter.

Respectfully submitted, this 6th day of October, 2014.

Edward L. Rease
Pro Se
381 Mark Avenue
Marietta, Georgia 30066
770-422-6246

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORHTERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EDWARD LORENZO REASE,** | l | |
| | l | |
| **Plaintiff,** | l | |
| | l | |
| **V.** | l | |
| | l | **FILE NO: 1-98-CV-02659-CC** |
| **AT&T CORP.,** | l | |
| | l | |
| **Defendant.** | l | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day, October 6, 2014,
served a true and accurate copy of the within and foregoing
PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER
29, 2014 ORDER upon the Defendant by depositing a copy thereof
in the "United States Mail," with adequate postage thereon,
addressed as follows:

> Mr. Sheldon W. Snipe
> AT&T Southeast Legal Dept. Suite 4300
> 675 West Peachtree Street, N.W.
> Atlanta, Georgia 30308

> Edward L. Rease
> Pro Se
> 381 Mark Avenue
> Marietta, Georgia 30066
> 770-422-6246
> erease@bellsouth.net

ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 6 2014

JAMES N. HATTEN, Clerk

By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **EDWARD LORENZO REASE,** | l |
| | l |
| **Plaintiff,** | l |
| | l |
| **V.** | l **CIVIL ACTION FILE NO: 1:02-CV-02536-CC** |
| | l |
| **AT&T CORP. etc,** | l |
| | l |
| **Defendants.** | l |

---

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S
## SEPTEMBER 29, 2014 ORDER

---

**COMES NOW** Edward Lorenzo Rease (Plaintiff or Rease) in the above styled civil

action, pursuant to Local Rule 7.2(E), and files this Plaintiff's Motion for Reconsideration of the

Court's September 29, 2014 Order.

## I.     INTRODUCTION

### A.     *Motion for Reconsideration Standards.*

"A Motion for reconsideration should be filed only when, after careful consideration, it is

deemed 'absolutely necessary' by the movant." ***Paper Recycling, Inc. V. Amoco Oil Co.***, 856 F.

Supp. 671 (N.D. Ga. 1993); see also LR 7.2(e), NDGa (noting that "[m]otions for

reconsideration shall not be filed as a matter of routine practice"). Instead, "the motion should be

reserved for certain limited situations, namely the discovery of new evidence, an intervening

development of change in the controlling law, or the need to correct a clear error or prevent a

manifest injustice."

It is "absolutely necessary" that Plaintiff brings forth his "Motion for Reconsideration"

for good cause. This present matter is only one case involving two cases and four parties (Rease,

1

AT&T, Ballowe, and CWA).

## II. ARGUMENT

In the District Court's Order [Doc. No. 93] dated September 29, 2014, the Court referenced *Weeks v. Jones* and *Mullins v. Nickel Plate Mining Co*. to support its ruling. Consequently, the Honorable Judge Clarence Cooper's Order did not capture the total meaning of Rule 60(a) and how it is applied to Weeks, Mullins, or Rease' case--there are similarities and differences. Regardless, Weeks and Mullins can be used to support Rease' motion to have clerical errors corrected.

### A. *Rule 60(a) as applied in Weeks v. Jones.*

In regards to Weeks, it is unlike this present matter for most parts. However, Weeks and Rease are similar because both district courts erred by revisiting their former ruling based on their assessment of the merits. **(1)** Weeks involved the determination of whether the right to appointment of counsel in capital habeas corpus cases under 21 U.S.C. § 848(q)(4)(B) depends on the ultimate merits of a death-sentenced prisoner's habeas claims. **(2)** After appointing counsel, **(3)** the district judge sua sponte found that the federal habeas petition was frivolous, **(4)** set aside the appointment order under Federal Rule of Civil Procedure 60(a), and **(5)** thereby prevented payment of the capital petitioner's attorneys.

The petitioner-appellant, Varnall Weeks, was executed on May 12, 1995. Preceding his execution, Weeks's attorneys challenged his death sentence in state and federal court on the basis of his mental incompetence to be executed. Because Weeks was indigent, his attorneys represented him without any payment from their client, and they received no compensation for their representation from the State of Alabama. Following the denial of Weeks's second request for post conviction relief by the Alabama courts, **(6)** his counsel filed a petition for writ of habeas

2

corpus in federal court in the Middle District of Alabama on May 10, 1995, **(7)** as well as a motion requesting appointment as counsel under 21 U.S.C. § 848(q) and **(8)** a motion to proceed in forma pauperis. That same day, **(9)** the district court granted the motions for appointment of counsel and **(10)** to proceed in forma pauperis, but **(11)** it denied Weeks's petition for habeas relief on the merits and **(12)** denied a stay of execution.

On May 11, 1995, Weeks's counsel appealed the district court's denial of a certificate of probable cause and sought a stay of execution in this court. A majority panel addressed the merits of his incompetency claim and concluded, based on the fact-findings of the state trial judge and the evidence presented at the state evidentiary hearing, that Weeks was not mentally unfit to be executed. *Weeks v. Jones*, 52 F.3d 1559, 1561-62 (11th Cir.).

**(13)** In July, 1995, Weeks's counsel contacted the district court clerk's office because they had not yet received their vouchers needed to submit fee requests. **(14)** On August 2, 1995, the district court sua sponte issued an order setting aside its previous order appointing counsel for Weeks under § 848(q) "pursuant to Rule 60(a), Federal Rules of Civil Procedure." R2-22-2.

Significantly, in Weeks the statute specifically contemplates that a capital inmate shall have federally appointed counsel in habeas proceedings involving competency to be executed. 21 U.S.C. § 848(q)(8). In a successive death penalty case that raised competency to be executed, the Fifth Circuit reversed the district court's denial of appointment of counsel under § 848(q)(4(B) and explained that "[o]n its face, § 848(q)(4)(B) does not condition the appointment of counsel on the substantiality or non-frivolousness of petitioner's habeas claims." *Barnard v. Collins*, 13 F.3d 871, 879 (5th Cir.), cert. denied, 510 U.S. 1102, 114 S.Ct. 946, 127 L.Ed.2d 363 (1994). **(15)** In connection with Weeks's federal habeas petition, the district court correctly appointed Week's counsel, who had represented him in his state post conviction proceedings as well as

3

prepared his habeas petition without compensation. **(16) The district court erred in revisiting its former ruling based on its assessment of the merits of Week's habeas petition after his execution**.

**(17) The district court also erroneously based its sua sponte order that denied Weeks's counsel's appointment on Federal Rule of Civil Procedure 60(a)**, which permits corrections "at any time" of "[c]lerical mistakes" in judgments and orders "arising from oversight or omission." Therefore, **(18)** the district court not only erred legally in its subsequent sua sponte denial of Weeks's counsel's appointment motion, **(19)** but it also erred procedurally in using Rule 60(a) as authority for its "changed ruling." **(20)** The district court was reversed in Weeks.

## B.    *Rule 60(a) as applied in Mullins v. Nickel*.

**(1)** Mullins involves an appeal from a district court order that retroactively certified a partial summary judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b). **The District Court's order was vacated to the extent it purports to be retroactive**.

Appellees, trustees of the United Mine Workers of America Health and Retirement Funds, brought suit against Appellant Nickel Plate Mining Company in the Northern District of Alabama Jurisdiction was based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976) and § 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1132 (1976).

The complaint alleged that Nickel Plate and the United Mine Workers of America (UMW) entered into the National Bituminous Coal Wage Agreement of 1974 and the National Bituminous Coal Wage Agreement of 1978. Under the agreements Nickel Plate was obligated to make monthly contributions to the UMW Health and Retirement Funds. The trustees, asserting that Nickel Plate breached both agreements, sought injunctive relief, damages and attorney's

4

fees.

**(2)** Following a series of procedural maneuvers, the parties reached a settlement. **(3)**

Nickel Plate executed a promissory note. **(4)** The district Court acting on its own motion

dismissed the action. Within three months of the dismissal trustees petitioned for reinstatement

of the action and for leave to amend their complaint. The district court granted both motion. The

amended complaint alleged Nickel Plate had breached its obligations under the promissory note.

The trustees moved for partial summary judgment based on breach of the promissory

note, and on October 23, 1981 the district court granted the partial summary judgment in an

order stating:

> ORDERED, ADJUDGED AND DECREED that plaintiffs have and recover of
> defendants Nickel Plate Mining Company, Inc. and Lake Mining Company, Inc. the sum
> of Five Hundred Twenty Thousand Thirty-Seven and 44/100 Dollars ($520,037.44), for
> which let execution issue.

The trustees filed an affidavit requesting that a writ of garnishment be served upon

Birmingham Trust National Bank. The writ was issued and notice was given to Nickel Plate.

Within ten days Nickel Plate filed a separate action for wrongful garnishment which was

subsequently merged into the instant action as a counterclaim.

The trustees later moved for the certification of the October 23 partial summary judgment

as a final judgment pursuant to Fed.R.Civ.P.54(b). On March 4, 1982 the district court granted

the motion and amended the October 23 judgment, was amended to read as follows:

> It is hereby ORDERED, ADJUDGED AND DECREED that plaintiffs have and recover
> of defendants Nickel Plate Mining Company, Inc. and Lake Mining Company, Inc. the
> sum of Five Hundred Twenty Thousand Thirty-Seven and 44/100 Dollars ($520,037.44).
> The court expressly determines that there is no just reason for delay in the entry of a final
> judgment for the aforesaid amount. This judgment is ordered entered as a final judgment
> under FRCP 54(b). Execution on this judgment and proceedings to enforce this judgment
> may be taken at any time after the expiration of 10 days from October 23, 1981.

**(5)** The Court failed, however, to make the determinations and directions contemplated

5

by FRCP 54(b) although it was the court's intention to do so. Actually, **(6)** Rule 54(b) provides

that in actions involving multiple claims for relief an order that finally disposes of one or more

but fewer than all the claims does not terminate the action in the district court. Such an order is

subject to revision at any time prior to entry of a final decision unless the district court: **(7)**

expressly determines that there is no just reason for delay; and **(8)** expressly directs the entry of

judgment. **(9)** In the absence of a certification by the district court that meets both of these

requirements a determination as to some but not all claims does not qualify as a final judgment

and is ordinarily an un-appealable interlocutory order. ***Huckeby v. Frozen Food Express***, 555

F.2d 542 (5th Cir. 1977); ***B. B. Adams General Contractors, Inc. v. Department of Housing***

***and Urban Development***, 501 F.2d 176 (5th Cir. 1974).

In summation, **(10)** Rule 54(b) envisions that adjudication as to some but not all claims in

a multiple-claim suit are to be final and appealable only upon an exercise of the district court's

discretion; the requirement that the district court to make an explicit entry of judgment and

certification, which serves the purpose of informing the parties the district court intends to

exercise that discretion. ***Ryan v. Occidental Petroleum Corp.***, 577 F.2d 298 (5th Cir. 1978).

**(11)** The partial summary judgment entered October 23 was not certified pursuant to rule

54(b). **(12)** On March 4, 1982 the district court indicated that its failure to certify the judgment

was caused by mistake or oversight. **(13)** The court then entered an amended judgment that

retroactively made final the October 23 judgment. **(14)** The October 23, 1981 judgment was also

interlocutory. **(15)** The district court purported to act pursuant to Fed.R.Civ.P. 60(a). **(16)** The

trustees contend that the court had the power to act under rule 60(b). **(17)** The district court,

therefore, had the power to certify the judgment as final pursuant to rule 54(b), **(18)** but it did not

have the power to make that certification retroactive. **(19)** To hold otherwise would deprive

6

Nickel Plate of its right to appeal. **(20)** The district court and the parties may have considered the October 23 judgment to be a "final judgment," but it was not, **(21)** and absent a rule 54(b) certification Nickel Plate had no right to appeal. *Ryan*, 577 F.2d 298. **(22)** If the retroactive certification was allowed to stand, an appeal would have been untimely and would have had to be dismissed.

**(23)** The judgment of the district court was **VACATED** in part and **REMANDED** consistent with the aforementioned.

## C. *Rule 60(a) as Applied in Rease v AT&T, Ballowe, and CWA.*

Rule 60(a) authorize the District Court to enter a corrected judgment and affirm its decision to do so. It allows a district court to correct a clerical error in a judgment if the error causes the judgment to inaccurately reflect the results of the court's adjudication.

In the 5th Circuit past decision it has looked at three criteria to determine whether a mistake can be corrected under Rule 60(a): **(1)** the nature of the mistake; **(2)** the district court's intent in entering the original judgment; and **(3)** the effect of the correction on the parties' substantial rights. *There is substantial overlap between these three criteria.*[1] Each is but a slightly different way of expressing the core idea that resort to Rule 60(a) may be had when "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated."[2] Accordingly, Rule 60(a) authorized the District Court to correct the judgment so as to reflect that Rease' original judgment was dismissed "without prejudice." *It voids the argument of res judicator and collateral estoppel in this matter*.

## 1. *The nature of the mistake.*

---

[1] *Cf. Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011)(explaining that while the five factors used to determine whether a plaintiff has prudential standing under the Lanham Act "do not pose five wholly distinct inquires..., each turn the prism illuminates a slightly different facet of a single underlying question").

[2] *Bernstein v. Lefrak* (In re *Frigitemp Corp*.), 781 F.2d 324, 327 (2d Cir. 1986).

To be correctable under Rule 60(a), the mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature."[3] Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope;[4] missteps involving substantive legal reasoning are not.[5] For example, Rule 60(a) allows a district court to amend its judgment to modify a jury's damages award where the jury had committed a simple mathematical error while computing the damages.[6] But a district court cannot rely on Rule 60(a) to amend a judgment that awards specific performance so that it instead awards both specific performance and money damages.[7] **In short, "A Rule 60(a) motion can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced."**[8]

Here, the change to the judgment targets a clerical mistake. Oversight, inadvertently or erroneously designating a dismissal as being "with prejudice" instead of "without prejudice" is the type of rote, typographical error of transcription that could be committed by a law clerk or a judicial assistant. It is not an error of judgment or legal reasoning, as no chain of legal reasoning could possibly lead a court to conclude that the judgment should be granted "with prejudice."

---

[3] In re *Gallardi*, 745 F.2d 335, 337 (5th Cir. 1984) (per curiam) (quoting *Dura-Wood Treating Co., Div. of Roy O. Martin Lumber Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982)). "Amanuensis" is a synonym for "scrivener," a person whose job is to write from dictation or to copy manuscript.

[4] See *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998) ("Rule 60(a) may be used to correct 'mindless mechanistic mistakes' which require no additional legal reasoning." (quoting *United states v. Kellogg* (In re *W. Tex. Mktg. Corp.*), 12 F.3d 497, 504 (5th cir. 1994))).

[5] See In re *Am. Precision Vibrator Co.*, 863 F.2d at 430 (explaining that Rule 60(a) "does not encompass errors that involve judgment or discretion"); see also *Rutherford v. Harris County*, 197 F.3d 173, 190 (5th Cir. 1999( ("[C]orrection of an error in substantive judgment is outside the reach of Rule 60(a)."); *United States v. Griffin*, 782 F.2d 1393, 1397 (7th Cir. 1986) ("[F]actual and legal misconceptions, as well as exercises of discretion, may not be corrected under Rule 60(a), while blunders in execution may be."); *Jones v. Anderson-Tully Co.*, 722 F.2d 211, 212 (5th Cir. 984) ( per curiam) ("Rule 60(a) clerical mistakes...are not errors of substantive judgment.").

[6] *United States ex rel. Miss. Road Supply Co. v. H.R. Morgan, Inc.*, 542 F.2d 262, 269 (5th Cir. 1976).

[7] *Trahan v. First. Nat'l Bank of Ruston*, 720 F.2d 832, 833-34 (5th Cir. 1983).

[8] In re *Gilardi*, 745 F.2d at 337 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 2854 (2d ed. 1977)).

Plaintiff's original judgment (1:98-CV-02659-CC) was dismissed **"without prejudice"** in an Order [Doc. No. 156] dated March 15, 2002. On March 28, 2002, AT&T filed a motion [Doc. No. 160] to amend [Doc. No. 156] order of dismissal to a dismissal "with prejudice." Judge Cooper granted the Defendant's motion to dismiss "with prejudice" in a Order [Doc. No. 169] on November 25, 2002. In essence, the Court gave AT&T a "second" chance by providing AT&T with a second summary judgment that canceled the original judgment. The District Court's Order [Doc. No. 169] was vacated and remand by the Appellate Court in a Judgment [Doc. No. 179] dated September 5, 2003. It is quite clear that Plaintiff had the right to re-file his complaint due to the original judgment being dismissed "without prejudice." Unfortunately, the Clerk Office through clerical error did not properly process the Appellate Court's order to vacate and remand per Local Rule 58.3(B)[9] and there could have not been a proper certification as a result thereof. This misstep is not involving substantive legal reasoning but is a clerical mistake that is mechanical in nature that is within Rule 60(a)'s scope. However, this misstep had a direct bearing on this case or Rease re-filed complaint (1:02-CV-02536-CC) being dismissed in a partial judgment order [Doc. No. 16] on February 14, 2003 due to res judicator and collateral estoppel. Again, Plaintiff's original judgment was dismissed "without prejudice," which meant that he had the to re-file his complaint.

## 2.    *The District Court's intent in entering the original judgment.*

A district court's authority under Rule 60(a) is also limited to making corrections that are consistent with the court's intent at the time it entered the judgment.[10] Rule 60(a) does not

---

[9] **Judgment Modified, Vacated, or Reversed.** When the judgment of this court has been modified, vacated, or reversed on appeal, the clerk shall immediately present a proposed order to the court making the remittitur the judgment of this court and shall notify counsel and/or the parties of the entry of said order and that they are required to prepare and present promptly to the court any such further orders as may be required.
[10] *See In re Gallardi*, 745 F.2d at 337 (limiting Rule 60(a) to corrections that cause the judgment to reflect what "was obviously intended but inadvertently omitted by the district court at the time the original order was

9

"provided for the correction of the deliberate choice of the district judge,"[11] even where that deliberate choice is based on a mistake of law.[12] Rather, "Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake of oversight did another."[13] The 5th circuit ascertain the district court's intent at the time it entered the judgment by reviewing any other relevant documents that were produced contemporaneously with the judgment, such as a memorandum opinion or order,[14] findings of fact and conclusions of law,[15] the transcript of a hearing,[16] or a signed stipulation of the parties.[17]

    The 5th Circuit's precedent lends strong support to the conclusion that Rule 60(a) allows a judgment's "with prejudice" or "without prejudice" denomination to be changed when the change comports with the intent conveyed by the substance of the district court's adjudication. In *Logan v. Burgers Ozark Country Cured Hams*, the district court's memorandum opinion and

---

entered"); *Warner v. City of Bay St. Louis*, 526 FF.2d 1211, 1212 (5th Cir. 1976) (explaining that Rule 60(a) targets errors "that cause the record or judgment to fail to reflect what was intended at the time of trial").

[11] *Bowen Inv., Inc. v. Carnelro Donuts, Inc.*, 490 F.3d 27, 29 (1st Cir. 2007) (citation and internal quotation marks omitted).

[12] See *Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 23 F.3d 616, 623 (7th Cir. 1997) ("In deciding whether Rule 60(a) applies, we have to distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error. Rule 60(a) allows for the former but not the latter."

[13] *Dura-Wood*, 694 F.2d at 114; see also *Chavez v. Balesh*, 704 F.2d 774, 776 (5th Cir. 1983) ("Rule 60(a) concerns 'what is erroneous because the thing spoken, written, or recorded is not what the person intended to speak, write or record,'" (quoting *Allied Materials Corp. v. Superior Prods. Co.*, 6220 F.2d 224, 226 (10th Cir. 1980).

[14] See, e.g., *Stovall v. Ill. Cent. Gulf R.R.*, 722 F.2d 190, 191 (5th Cir. 1984) (using the "memorandum opinion ... filed contemporaneously with the judgment" to resolve an ambiguity in the judgment); *Kokomo Tube*, 123 F.3d at 623-24 (same).

[15] See infra notes 48-53 and accompanying text.

[16] See, e.g., *Martin Midstream Partners v. Boone Towing Inc.*, 207 F.App's 439, 441 (5th Cir. 2006) (per curiam) (unpublished) (holding that an error in a judgment was correctable under Rule 609a) where it was "clear from the trial transcript" that the correction would effectuate the district court's intent); see also infra note 35 and cases cited therein.

[17] See, e.g., *Griffin*, 782 F.2d at 1394-97 (upholding a change entered under Rule 60(a) that corrected the rate at which interest would run on the judgment so that it comported with the rate to which the parties had agreed in a signed stipulation); see also *Dura-Wood*, 694 F.2d at 113-14 (upholding the district court's authority under Rule 60(a) to correct a judgment's award of $2,100 in attorneys' fees where the parties had stipulated that the fee award should be $6,780).

judgment both stated that the claims at issue were being dismissed "without prejudice."[18] When the district court attempted to change the judgment so that the dismissal would be "with prejudice," the 5th Circuit held that Rule 60(a) did not authorize the amendment. The reasoning of the memorandum order indicated that the correction was substantive, not clerical.[19] What was an unstated assumption in Logan--that the change would have been clerical had the court's memorandum order reflected an intention that the dismissal be with prejudice--became a stated holding in *Miller v. American International Group*.[20] In *Miller*, the district court's original final judgment was ambiguous as to whether the dismissal was with prejudice or without prejudice. To resolve that ambiguity, the Fifth Circuit looked to the reasons the district court gave for dismissing the case in the order that accompanied the judgment. The order made it clear that the dismissal was intended to be with prejudice. Accordingly, the Fifth Circuit held that Rule 60(a) empowered the district court to amend its judgment to clarify that the dismissal was with prejudice.[21] **Therefore, this Court should uphold the "intent" of Rease' original judgment being dismissed "without prejudice."** This 5th Circuit holding was also consistent with two Ninth Circuit decisions that held that a judgment's stated prejudicial effect can be changed under Rule 60(a) when the change is consistent with the intent expressed by the district court during the hearing at which dismissal was granted.[22]

The Honorable Judge Clarence Cooper referenced *Weeks v. Jones* and *Mullins v. Nickel*

---

[18] 263 F.3d 447, 454 (5th Cir. 2001).

[19] *Id.*

[20] 125 F.App'x 578 (5th Cir. 2005) (per curiam) (unpublished). Although *Miller* is an unpublished decision and thus is not binding precedent, see 5th Cir. R. 47.5.4, we find its reasoning persuasive.

[21] *Id.* at 579.

[22] See *Korea Exch. Bank v. Hanil Bank, Ltd.* (In re Jee), 799 F.2d 532, 535 (9th Cir. 1986) (allowing a judgment reflecting a dismissal with prejudice to be changed under Rule 60(a) to reflect a dismissal without prejudice where the transcript of the dismissal hearing showed that the district court intended to grant a voluntary dismissal without prejudice); *Huey v. Teledyne*, 608 F.2d 1234, 1237 (9th Cir. 1979) (allowing a judgment reflecting a dismissal without prejudice to be changed under Rule 60(a) to reflect a dismissal with prejudice where the transcript of the dismissal hearing showed that the district court intended to dismiss the case with prejudice for want of prosecution).

to rule against Rease in this matter in an Order [Doc. No. 93] dated September 29, 2014. However, in Weeks the district court erred procedurally by using Rule 60(a) as authority for its "changed ruling." **In other words, the district court in Weeks changed the "intent" or its initial ruling as the District Court did in this instant matter**. As a result, the district court was revered in Weeks and the district court should be reversed here as well.

In Mullins the district court "failed" to make the determinations and directions contemplated by FRCP 54(b) although it was the court's intention to do so. Rule 54(b) envisions that adjudication as to some but not all claims in a multiple-claim suit are to be final and appealable only upon an exercise of the district court's discretion; the requirement that the district court to make an explicit entry of judgment and certification, which serves the purpose of informing the parties the district court intends to exercise that discretion. ***Ryan v. Occidental Petroleum Corp.***, 577 F.2d 298 (5th Cir. 1978). The partial summary judgment entered October 23 was not certified pursuant to rule 54(b) and the district court could not retroactively make a change because it is not what was initially entered.

However, changing the judgment in this case to reflect that Rease' claims had been dismissed "without prejudice" in the original judgment is in the keeping with the District Court's intent at the time it entered the order. ***It requires no speculation to reach this conclusion***. The honorable Judge Clarence Cooper's Order [Doc. No. 156] dated March 14, 2002 (Entered: March 15, 2002) stated, "IT IS HEREBY ORDERED, for good cause shown, that Plaintiff's oral Motion to Dismiss is **GRANTED**. This case is hereby **DISMISSED WITHOUT PREJUDICE**." "[A] judge's own subsequent statements of his intent" are reliable evidence in the Rule 60(a) context.[23] Even putting those subsequent statements aside, it is apparent from the original record that the

___

[23] *In re Jee*, 799 F.2d at 535 (citing ***Jones & Guerrero Co. v. Sealift Pac.***, 650 F.2d 1072, 1074 (9th Cir. 981) (per curiam)).

District Court intended to grant Rease' motion to dismiss "without prejudice." In an Order [Doc. No. 232, p. 2] dated September 30, 2005, Judge Cooper further stated, "After construing Plaintiffs statements to be tantamount to a motion for voluntary dismissal, the Court dismissed Plaintiffs case without prejudice" [Doc. No. 156]. Even after welcoming the dismissal "without prejudice," it did not stop the defendant AT&T from filing a motion to have the dismissal change to a dismissal "with prejudice." In fact, on March 28, 2002, AT&T filed a motion [Doc. No. 160] to amend [Doc. No. 156] order of dismissal to a dismissal "with prejudice." Judge Cooper granted the Defendant's motion to dismiss "with prejudice" in a Order [Doc. No. 169] on November 25, 2002. The District Court's Order [Doc. No. 169] was vacated and remand by the Appellate Court in a Judgment [Doc. No. 179] dated September 5, 2003 (Entered: October 7, 2003). The Appellate Court stated, "Although Rease did not make any motion, AT&T stated that it did not oppose a voluntary dismissal of the case" (p. 2). The Appellate Court also stated that "the court [District Court] interpreted Rease's comments as a motion for voluntary dismissal and granted the motion to dismiss without prejudice, issuing a written order to that effect one day later, on March 14, 2002" (pp. 2-3). The Appellate Court further stated that "it was the trial judge [Judge Cooper] who construed his lack of preparation as a "motion for voluntary dismissal" (p. 3). Evidence shows that defendant AT&T knew the Court's intent as well. AT&T filed a response [Doc. No. 181, p. 2] dated October 27, 2003, and it indicated that as of that date "AT&T believes that Rease's Motion should be denied and that the case currently stands dismissed without prejudice. The Court of appeals vacated this Court's November 25, 2002 order, which had converted the prior dismissal without prejudice to dismissal with prejudice. The effect of the Court of Appeals' Order appears only to alter the "with prejudice" versus "without prejudice" status." Thus, AT&T's argument is that "When the November 25, 2002 Order was

13

vacated, the case returned to the procedural posture that it had prior to entry of that Order.

Therefore, the case stands dismissed without prejudice pursuant to the Court's prior Order of

March 14, 2002." And, it has always been the plaintiff Rease' position that the case was

dismissed "without prejudice." Accordingly, the District Court, the Appellate Court, the

Defendant, and the Plaintiff all believe that the **"intent"** of the District Court's original dismissed

judgment and the judgment of the Appellate Court was a dismissal "without prejudice."

### 3.    *The effect of the correction on the parties' substantial rights.*

Finally, Rule 60(a) "applies to all clerical miscues, trivial and important alike," including

those that "unsettle expectations" and "have significant effects."[24] **The relevant inquiry under**

**Rule 60(a) is not whether making the correction will have any effect on the parties' rights**

**and obligations under the judgment. MOST OF THE TIME, IT WILL.**[25] Rather, *the*

*question is whether granting the motion would require the District Court either to adjudicate an*

*issue it has not previously reached or to make a substantive modification to a prior adjudication*.

Where the record makes it clear that an issue was actually litigated and decided but was

incorrectly recorded in or inadvertently omitted from the judgment, the District Court can correct

the judgment under Rule 60(a), even where doing so materially changes the parties' positions and

leaves one party to the judgment in a less advantageous position.

A pair of cases **(Rutherford and Chavez)** highlights the distinction between a correction

to a judgment that is authorized by Rule 60(a) even though it has significant consequences for

the parties and a correction the Rule does not authorize because it impermissibly affects the

parties' substantial rights. In *Rutherford v. Harris County* a jury had awarded damages to an

employment-discrimination plaintiff, and the parties had stipulated that the district court would

---

[24] *Griffin*, 782 F.2d at 1397.

[25] *See id*. ("Why else do people seek alterations of judgments?").

14

decide the question of back pay.[26] **(1)** The court made findings of fact and conclusions of law and then entered a judgment that reflected only the damages awarded by the jury. **(2)** The district court later invoked Ruled 60(a) and amended both the judgment and the findings and conclusions to include back pay and prejudgment interest.[27] **(3)** The Fifth Circuit reversed. **(4)** Because the original findings and conclusions did not include a finding that the plaintiff was entitled to back pay or prejudgment interest, the failure to include those awards in the original judgment was an "error in substantive judgment that is outside the reach of Rule 60(a)."[28] Here, Rease' original judgment would not be an "error in substantive judgment that is outside the reach of Rule 60(a)" if the District Court change the original judgment back to a dismissal "without prejudice" judgment, it actual finding in the District Court initial ruling. The District Court in this matter reference Weeks and Mullins [Doc. No. 312] to deny Plaintiff's Motion to Have Clerical Errors Corrected [Doc. No. 311]. Similar to Rutherford, both Weeks and Mullins is unlike Rease' case in that they changed (RETROACTIVELY) the intent of the original judgment findings and it is a main reason why the district courts in all three cases were reversed.

By contrast, in ***Chavez v. Balesh***, **(1)** the district court's findings and conclusions stated that the plaintiff was entitled to $2,000 of liquidated damages, but the final judgment omitted liquidated damages.[29] **(2)** Because the final judgment recited that it was entered "in accordance with" the findings and conclusions, the 5th Circuit concluded that correcting the judgment to include the $2,000 in liquidated damages would not require any new substantive judgment and thus was permissible under Rule 60(a).[30] **(3)** The district court had already determined that the plaintiff was entitled to liquidated damages; the correction merely performed the clerical task of

---

[26] 197 F.3d at 178.
[27] *Id.*
[28] *Id.* at 190.
[29] 704 F.2d at 775
[30] *Id.* at 776-77.

15

conforming the judgment to what the court had actually decided when making its findings.[31]

**Chavez is extremely similar to Rease' case in that correcting the judgment to include the dismissal being "without prejudice" would not require any new substantive judgment and thus is permissible under Rule 60(a).**

In this case, changing the judgment to reflect that the case was dismissed "without prejudice" will not affect the defendants (AT&T, Ballowe, and CWA) substantive rights in a manner prohibited by Rule 60(a). *A correction would not require the District Court to resolve an issue of substantive law it had not previously reached*. Just as the court's findings and conclusions in Chavez evinced a clear intention to award liquidated damages. Here, in addition to the motion being dismissed "without prejudice" [Doc. No. 156] on March 15, 2002, it is also undeniable that this action came before the Court for a trial for four failure to promote claims on March 11, 2002 [See, Doc. No. 232, p. 2]. In fact, Rease had the right to file this new action because the argument of res judicator and collateral estoppel had been defeated. According to the District Court in the original complaint, "the Court may have committed error in ordering that the case be restored to the trial docket rather than leaving the case as dismissed without prejudice, as Defendant argued from the outset. The dismissal without prejudice as to the four failure to promote claims would have effectively put Plaintiff in the same position he was in as if he had never brought the claims. That is, Plaintiff would have been permitted to file a new action with respect to the four failure to promote claims. See Dade County v. Rohr Indus., 826 F.2d 983, 989 (11th Cir. 1987) (stating that the "voluntary dismissal of [a] federal action has the effect of placing the parties in a position as if the suit had never been filed"). Indeed to prosecute the claims, Plaintiff would have been required to re-file the case, pay a new filing fee, and allege the

---

[31] See also Dura-Wood, 694 F.2d at 113-4 (upholding an amendment of the judgment under Rule 60(a) that increased the size of an attorneys'-fees award where the parties had stipulated to the size of the fee award and the court's findings of fact stated that the court was awarding attorneys' fees "as stipulated by the parties").

16

claims in a new complaint. See Offbeat, Inc. v. Cager, No. Civ. A. 94-2796, 1997 WL 83140, at *1 (E.D. La. La. Feb 26, 1997) (holding that an order dismissing a case without prejudice requires the plaintiff to re-file the case, pay a new filing fee, and file a new complaint); Hickman v. Lively, 897 F. Supp. 955, 960 (N.D. Texas 1995) ("The 'without prejudice' condition permits a plaintiff to refile the complaint as if it had never been filed." [Doc. No. 232, p. 5).

## D. *The Clerk Office Erred by Continuing to Accept Filings and Pleadings from the Defendants' Counsels After Their Termination*.

The defendants AT&T and Ballowe's counsels were terminated from the case on February 14, 2003, which is the same date that the order to dismiss [Doc. No. 16] was issued. Ironically, the Clerk Office continued to accept filings and pleadings [Doc. No. 31, 35, 39, 44, etc.] from the defendants' counsels after their termination. Various filings are also docketed out of order [Doc. Nos. 50, 52, 51; and 67, 69, 68, 70]. *The clerical errors need to be corrected to eliminate inappropriate filings by the defendants and to correct the docket report with the filings in proper order and with the correct dates*.

## E. *The Clerk Office Erred by Improperly Entering a Judgment*.

Un-docketed submissions were issued to the honorable Magistrate Judge Joel M. Feldman on February 25, 2003 [Doc. No. 14], March 10, 2003 [Doc. Nos. 15; 26-1 and 26-2], and March 20, 2003 [Doc. Nos. 19 and 21]. The above case was dismissed against CWA in an order [Doc. No. 33] by Judge Cooper dated May 1, 2003 involving various filings [Doc. No. 1, 14, 15, 19, 21, 26-1 and 26-1. The order [Doc. No. 33] issued by Judge Cooper covered the same exact filings as was submitted to the Judge Feldman. An un-docketed termination of the case also occurred on May 1, 2003 (Entered: 05/02/2003). And, an un-docketed referral to Judge Feldman was completed on May 1, 2003, the same date the case was dismissed from CWA. There was no indication whether the case was dismissed "with or without prejudice." On May 2, 2003, a

17

judgment [Doc. No. 34] was entered. *The complaint and other filings was "with" Judge Feldman and not Judge Clarence Cooper when the judgment was issued*. Accordingly, when the judgment [Doc. No. 34] here in this matter was entered the District Court's judge that rendered it lacked jurisdiction of the subject matter. The judgment was entered after the case was terminated. Judge Cooper's dismissal as a result could have not include the actual complaint and amended complaint. And, the so-called dismissal by Judge Cooper did not dismiss all claims against all parties. Thus, the Clerk Office improperly entered the judgment prior to any action by Judge Feldman. The complaint was never properly dismissed. *These clerical errors need to be corrected to remove the judgment*.

## F.   *The Defendants are in Default.*

Plaintiff filed an amended complaint [Doc. No. 15] on February 14, 2003. An order [Doc. No. 16] was also issued on February 14, 2003 granting motion to dismiss to AT&T and Ballowe. Consequently, the motion to dismiss was to various filings and not the actual "complaint" and the motion to dismiss was not against all parties at that particular time. Another interesting verity is that the amended complaint was issued prior to the order allegedly dismissing the case against AT&T and Ballowe. Again, the defendants AT&T and Ballowe's counsels were also terminated on February 14, 2003. On March 3, 2003, Plaintiff filed an amended and supplement [Doc. No. 26] to the amended complaint [Doc. No. 15]. A response [Doc. No. 31] was filed by AT&T and Ballowe on March 6, 2003 to Plaintiff's motion to amend [Doc. Nos. 15 and 26] but their counsels were already terminated from the case as previously stated. CWA and its counsels never responded to the amended complaint nor did they respond to the amended and supplement complaint. As such, the defendants AT&T, Ballowe, and CWA did not respond to Plaintiff's amended and supplement complaint--they abandon the issues. On May 1, 2003, the case was

18

terminated [Doc. No. 1, 2003], the completed referral was sent to the Honorable Magistrate Judge Joel M. Feldman on May 1, 2003, and the judgment [Doc. No. 34] was entered on May 2, 2003. The defendants have defaulted by failing to respond to Plaintiff's motions after a period in excess of eleven years. *Additionally, the defendants AT&T and Ballowe do not have legal counsel or representation based on the docket sheet as of September 24, 2014.* Although Plaintiff has brought the defaulted issue to the attention of the Court on various occasions, the Clerk Office has also error by not recognizing the default. Accordingly, *Plaintiff is requesting that a "default judgment" (See, Federal Rules of Civil Procedure 55) be issued in his favor as outlined in his complaint; amended and supplement complaint.*

## G.    *Out-of-Order Docket Filings.*

Plaintiff take issue with the District Court stating that the "filings were not docketed erroneously" (Order, p. 1). All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket. The purpose of a Rule 60(a) motion is to make the judgment or record speak the truth but the District Court seem to believe that the "Docket Report" can be used to say something other than what originally was pronounced. Therefore, it is Plaintiff's position that the "Docket Report" here in this matter does not speak the truth.

## III.    CONCLUSION

In conclusion, the District Court can make a correction to a mistake in its judgment that is clerical in nature--as it is the nature of the mistake. A correction in this case is consistent with the Court's intent at the time it entered the original judgment. And the correction will not expand or modify the Court's prior adjudication in a manner that affected the parties substantive rights. As a result, the District Court will be acting within the scope of the authority conferred by Rule

60(a) when it correct the judgment to reflect that Rease original claims had been dismissed

"without prejudice."

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 60(a) and Local

Rule 7.2(E), Plaintiff respectfully requests that this Court correct the clerical errors and **GRANT**

**his Motion**. To date, AT&T and Ballowe have not responded in this present matter.

Respectfully submitted, this 6th day of October, 2014.

Edward L. Rease
Pro Se
381 Mark Avenue
Marietta, Georgia 30066
770-422-6246

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORHTERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EDWARD LORENZO REASE,** | 1 | |
| | 1 | |
| **Plaintiff,** | 1 | |
| | 1 | |
| **V.** | 1 | |
| | 1 | **FILE NO: 1-02-CV-02536-CC** |
| **AT&T CORP., etc.,** | 1 | |
| | 1 | |
| **Defendants.** | 1 | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day, October 6, 2014,

served a true and accurate copy of the within and foregoing

PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER

29, 2014 ORDER upon the Defendants by depositing a copy thereof

in the "United States Mail," with adequate postage thereon,

addressed as follows:

> Mr. Sheldon W. Snipe
> AT&T Southeast Legal Dept. Suite 4300
> 675 West Peachtree Street, N.W.
> Atlanta, Georgia 30308

> Mr. John L. Quinn
> Robert Moore Weaver
> Nakamura, Quinn & Walls LLP
> 3516 Covington Highway
> Decatur, Georgia 30032

> Edward L. Rease
> Pro Se
> 381 Mark Avenue
> Marietta, Georgia 30066
> 770-422-6246
> erease@bellsouth.net